**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 00-10433
_____

JOHN L. WHEAT,

                               Petitioner - Appellant,

versus

GARY L. JOHNSON, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL JUSTICE
INSTITUTIONAL DIVISION,

                               Respondent - Appellee.

Appeal from the United States District Court
for the Northern District of Texas
January 5, 2001

Before DAVIS, EMILIO M. GARZA, and DENNIS, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Texas prisoner John L. Wheat seeks a certificate of appealability to challenge the district court's denial of his 28 U.S.C. § 2254 petition for a writ of habeas corpus. Wheat was convicted of capital murder in violation of Tex. Penal Code Ann. § 19.03(a)(8) and sentenced to death. The Texas Court of Criminal Appeals affirmed his conviction on direct appeal. State habeas counsel was appointed, but relief was denied by both the trial court and the Texas Court of Criminal Appeals. Wheat then filed an application for a writ of habeas corpus for relief from the judgment of the state

-1-

court under § 2254(a). The district court disposed of all claims and denied this writ, as well as subsequently denying the required certificate of appealability (COA). Wheat now appeals this decision, presenting seven arguments as to why habeas relief is proper. Because these arguments either lack merit or are not properly considered on collateral review, we deny Wheat's motion for a COA.

## I

John Wheat was a neighbor of Angela Anderson and her three children)) seven-year-old Eddie, six-year-old Ashley, and nineteen-month-old Lacey)) in the Les Jardins apartment complex in Fort Worth. Angela relied on neighbors in the complex, including Wheat, to babysit her children when she worked night shifts on an assembly line. On the evening of July 25, 1995, Wheat watched Eddie and Ashley, while another neighbor took care of Lacey. The next morning, Ashley told her mother that Wheat had kissed her on the lips and touched her vagina. Angela reacted by instructing her son to deliver a handwritten note to Wheat that read as follows:

> Ashley said you put your hand on her private (in her shorts) part. <u>What the fuck?</u> I will be calling the police! (emphasis in original).

Angela then started upstairs to use a telephone to report the incident to the police. As she left her apartment, Wheat came around the corner and began firing a .45 automatic pistol, chasing her upstairs. Injured, Angela fled into another apartment to rest momentarily. Wheat entered this apartment's open front door, chased Angela into the rear bedroom, and with a .22 caliber derringer shot her twice in the head, though not fatally. Wheat then reloaded the automatic pistol and returned to Angela's apartment, where he shot to death her three children.

Hearing gunfire, the apartment security officer went outside to investigate. Wheat shot at

him, grazing his head. The security officer went back inside the apartment, but Wheat also shot through the door three times, further injuring the officer. Wheat also shot a police officer who responded to the police dispatch, inflicting a life-threatening injury.

Wheat was convicted of capital murder for the killing of the infant, Lacey, and sentenced to death. Wheat offers seven arguments in favor of his motion for a COA: (1) that the Texas death penalty scheme is unconstitutional in that it prevents defendants from offering evidence of parole ineligibility to juries considering the factor of future dangerousness; (2) that the trial court erred by excluding expert testimony that Wheat would probably not live long enough to qualify for release on parole; (3) that the trial court erred by disallowing Wheat to voir dire potential jurors regarding the forty-year parole ineligibility in Texas for life sentences for capital murder; (4) that there was insufficient evidence to support the jury finding of future dangerousness; (5) that the trial court erred by granting the State's challenge for cause to a venire member for his professed aversion to the death penalty; (6) that he was deprived of his right to effective assistance of counsel when his lawyer failed to present a defense of insanity at the guilt-or-innocence phase of his trial; and (7) that the Texas Court of Criminal Appeals erred in state habeas proceedings by refusing to consider a supplement to Wheat's original state writ application that would have brought out an argument of ineffective assistance of counsel.

To obtain a COA, Wheat must make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). This standard is met if Wheat demonstrates that "'reasonable jurists could debate whether (or, for that matter agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" *Barrientes v. Johnson*, 221 F.3d 741, 771 (5th Cir. 2000) (quoting *Slack v. McDaniel*, 529

U.S. 473, 120 S.Ct. 1595, 1603-04, 146 L.Ed.2d 542 (2000)). Our determination requires deference

to the state habeas court's adjudication of Wheat's claims on the merits, unless that adjudication: (1)

"was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States," § 2254(d)(1), or (2) constituted an

"unreasonable determination of the facts in light of the evidence presented in the State court

proceeding," § 2254(d)(2).

II

Several of Wheat's claims are procedurally barred. Wheat's arguments of insufficient

evidence to prove the probability of future dangerousness, and erroneous granting of the State's for-

cause challenge to a venire member were not raised on direct appeal. In his habeas petition, Wheat

has made no attempt to argue cause and prejudice for the procedural default, so that the arguments

are not properly considered on habeas review. *See Keeney v. Tamayo-Reyes*, 504 U.S. 1, 112 S.Ct.

1715, 118 L.Ed.2d 318 (1992).

Wheat's argument regarding the alleged improper exclusion of expert testimony that Wheat

would probably not live long enough to qualify for parole is also procedurally barred. Wheat raised

this argument on direct appeal, where the court found that the issue was not preserved during

Wheat's trial.

The intended offer of proof on the issue at the punishment phase went as follows:

A [by Dr. Mills]: I don't feel I was able to give full meaning to my opinion regarding future
dangerousness because of my inability or instructions not to discuss the parole issue.
I believe that Mr. Wheat will not live 40 years. His physical health is bad and he has
deteriorated over the last year. He is very likely to end up needing a nursing home in
the future. And his life expectancy is essentially impossible to reach the age of 90.
Q [by defense counsel]: That's approximately the age, 90 or 93, when Mr. Wheat, if in fact
he received a life sentence, would only become eligible for parole.

A: That's correct.

Q: To what degree or percentage can you say for the record was the impact of your testimony reduced by regarding future dangerousness without being able to discuss this factor before the jury?

A: I would say 50 percent.

Mr. Ford: That's our offer of proof, Judge.

The Court: Let me add that I think there are some questions in there that I would permit you to ask him in front of the jury. I don't know exactly what you're seeking to offer.

Mr. Ford: That's okay, Judge. I just wanted that on the record as our offer of proof.

We agree with the Texas Court of Criminal Appeals that the offer of proof was not properly preserved because without clarification by defense counsel it was impossible to determine which testimony the trial court allegedly erroneously excluded. Wheat again makes no attempt on appeal to show either cause or prejudice for this procedural default; he is therefore barred from now bringing the claim on federal habeas review. *See, e.g., Sharp v. Johnson*, 107 F.3d 282, 285-86 (5th Cir. 1997) (applying the cause and prejudice standard to the failure to preserve an issue).

Finally, Wheat argues that he was deprived of effective assistance of counsel when the Court of Criminal Appeals during state habeas proceedings refused to consider a supplement to his original state writ application. Wheat contends that this supplement would include an affidavit from Wheat's counsel acknowledging his own ineffective assistance for failing to preserve an issue (related to future dangerousness) for appeal, as well as the Court of Criminal Appeals' criticism of counsel for this failure. The district court ruled that "[t]here is simply no authority to support the proposition that a petitioner has a constitutional right to have untimely submitted materials considered on their merits," citing *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). And as the district court further noted, infirmities in state habeas proceedings are not proper grounds for federal habeas relief. *See Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995); *Duff-Smith v. Collins*,

973 F.2d 1175, 1182 (5th Cir. 1992). Wheat now attempts to circumvent these problems by emphasizing the importance of the supplement to the full development of his ineffective assistance claim, and theorizing that he "cannot be held responsible for any failure to develop any facts under [§ 2254]...since the failure is not his own but rather due to the state habeas court's failure to allow appropriate supplementation of the then-pending writ application." The trouble with this argument, however, is that the failure *was* Wheat's: his supplemental application was filed late. Wheat has again made no attempt to argue "cause" for his procedural default on this claim, so that he is barred from bringing these ineffective assistance of counsel arguments on federal habeas review. *See Coleman*, 501 U.S. at 750, 111 S.Ct. at 2565 (applying the cause and prejudice standard to a late filing of a notice of appeal in state court).

III

Wheat argues that the Texas death penalty scheme violates the Fifth, Eighth, and Fourteenth Amendments to the extent that it prevents juries from considering the mitigating circumstances that dictate against the imposition of the death penalty. Fifty-three-year-old Wheat argues that the mitigating circumstances in his case are that there is an exceedingly low probability that, given his forty-year parole ineligibility on a life sentence, he would constitute a continuing threat to society. Wheat therefore analogizes his case to *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), where the Supreme Court held that a capital defendant must be given the opportunity to inform the sentencing jury that he is parole ineligible if the prosecution argues future dangerousness.

The district court found that this argument would ask the court to adopt a new rule of constitutional law, so that the claim is *Teague*-barred, regardless of the merits. *Teague v. Lane*, 489

U.S. 288, 109 S.Ct. 1060, L.Ed.2d 334 (1989).  We agree.

Under *Teague*, a federal court may not create new constitutional rules of criminal procedure on habeas review.  *See Teague*, 489 U.S. at 301, 109 S.Ct. at 1070; *Fisher v. Texas*, 169 F.3d 295, 305 (5th Cir. 1999).  The treatment of parole eligibility that Wheat seeks would constitute a rule of criminal procedure.  *See O'Dell v. Netherland*, 521 U.S. 151, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997) (characterizing the rule announced in *Simmons* as a rule of criminal procedure).  Wheat's proposed approach, although he takes pains to point out the similarities between his own situation and that in *Simmons*, would also constitute a "new" rule under existing Fifth Circuit law.  We have repeatedly recognized that the *Simmons* rule applies only where there is a life-without-possibility-of-parole alternative to the death penalty, an alternative that does not exist in Texas.  To hold that a lengthy parole ineligibility is the *de facto* equivalent of a life sentence without possibility of parole, as Wheat argues, would create a new rule under the law of our Circuit.  *See Simmons*, 512 U.S. at 168 n.8, 114 S.Ct. at 2196 (noting that Texas is unlike South Carolina in that it does not offer a life-without-possibility-of-parole alternative to the death penalty); *Miller v. Johnson*, 200 F.3d 274, 290 (5th Cir. 2000) (holding that the *Simmons* rule is not applicable to defendants who would be eligible for parole if sentenced to life); *Hughes v. Johnson*, 191 F.3d 607, 617 (5th Cir.), cert. denied, 2000 WL 38193 (No. 99-7701)(U.S. Jan. 24, 2000) (same); *Muniz v. Johnson*, 132 F.3d 214, 224 (5th Cir.), cert. denied, 523 U.S. 1113 (1998) (same); *Montoya v. Scott*, 65 F.3d 405, 415 (5th Cir. 1995) (same); *Allridge v. Scott*, 41 F.3d 213, 222 (5th Cir.), cert. denied, 514 U.S. 1108 (1995) (holding that *Simmons* is only applicable where the state argues future dangerousness and the defendant is legally ineligible for parole); *Collier v. State*, 959 S.W.2d 621, 623 (Tex. Crim. App.), cert. denied, __ U.S. __, 199 S.Ct. 335, 142 L.Ed.2d 276 (1998) (holding that parole considerations do not apply

to capital cases because when deciding future dangerousness, juries are free to consider dangerousness to prison as well as free society). Thus, even if Wheat's construction could in the abstract be seen as an extension of the *Simmons* rule, avoiding the *Teague* bar, this possibility has been ruled out by this Circuit.

IV

In a related claim, Wheat argues that his Fifth, Sixth, Eighth, and Fourteenth Amendment rights were violated when the trial court denied his motion to examine potential jurors regarding the forty-year parole ineligibility for life sentences for capital murder. Wheat asserts that his ability to exercise peremptory challenges, as well as the court's ability to fulfill its obligation to remove prospective jurors, was impaired when he was unable to question jurors regarding parole eligibility. In *King v. Lynaugh*, 850 F.2d 1055, 1061 (5th Cir. 1998), however, we held that there is no constitutional right to question venire members on their conceptions and understandings of the Texas parole system and parole eligibility. *See also Collier v. State*, 959 S.W.2d at 623; *Smith v. State*, 898 S.W.2d at 846; *Boyd v. State*, 811 S.W.2d at 118 n.12. Wheat's claims are indistinguishable from the issues addressed in *King*, so that we cannot grant relief on these grounds.

V

Wheat next argues that his court-appointed trial counsel violated his Sixth Amendment right to the effective assistance of counsel by failing to present an insanity defense at the guilt-or-innocence phase of the trial. Wheat asserts that if called, the court-appointed psychiatrist would have testified that Wheat was legally insane at the time of the offense. Wheat contends that because the insanity defense was the only viable defense available to him, trial counsel's error rises to the level of a constitutional deprivation.

-8-

The district court, following an evidentiary hearing on this issue, rejected the ineffective assistance of counsel claim. We review this decision *de novo* because ineffective assistance of counsel is a mixed question of law and fact. *See Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999). Historical findings of fact, however, are entitled to a presumption of correctness. *See id.* To prevail in his claim, Wheat must demonstrate (1) deficient performance by counsel that (2) prejudiced his defense such that the outcome of the trial would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Wheat cannot meet this standard because, as the district court correctly found, there was no deficient performance by trial counsel, so that the first prong of the *Strickland* standard is not met.

It is true that there is some evidence that Wheat suffers from a mental deficiency. Specifically, the court-appointed psychiatrist testified in the punishment phase that Wheat was delusional shortly after his arrest, that magnetic resonance imaging of his brain revealed a large empty pocket in the base of his brain, that Wheat suffers from Subcortical White Matter Disease (perhaps caused by workplace exposure to toluene), and that this brain damage was in a region that regulates impulsiveness, aggression, and violence. This psychiatrist, Dr. Mills, asserts that if called during the guilt-or-innocence stage of the trial, he would have testified that Wheat was legally insane at the time of the offense.

Wheat's trial counsel, however, investigated the possibility of an insanity defense and made a tactical choice to reserve the doctor's testimony until the punishment phase. *See Williams v. Cain*, 125 F.3d 269, 278 (5th Cir. 1997) ("failure to present…evidence would not constitute 'deficient' performance within the meaning of *Strickland* if…[counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be unwise."). Even if we were not applying

the deferential *Strickland* standard, we would have to find Wheat's counsel's choice was arguably a sound one. By reserving Dr. Mills' testimony for the punishment phase, Wheat's counsel benefitted from the discovery rules in effect for the trial that did not require disclosure of plans to produce psychiatric testimony in the punishment phase. Counsel thus spared Dr. Mills' testimony the impeachment that would have been likely at the guilt-or-innocence phase. As trial counsel testified at the district court evidentiary hearing, Dr. Mills himself told them that the insanity defense was not a viable one. The doctor also testified that the opinions he presented at the punishment phase were based primarily on Wheat's own testimony about his delusions, and only secondarily on the brain damage evidence. Wheat's supervisor at work testified in the punishment phase that Wheat's exposure to toluene had been minimal. Additionally, a licensed psychologist determined that Wheat was competent to stand trial, that his abnormal mental condition did not grossly and demonstrably impair his perception of reality, and that there was no indication of a severe mental illness or emotional disturbance that would preclude his ability to understand right and wrong. If Dr. Mills had testified at the guilt-or-innocence phase, the record indicates that his testimony would have been impeached. We accordingly find no deficient performance; the decision to reserve the insanity evidence as mitigating evidence during the punishment phase was a reasonable tactical choice, well above the *Strickland* standard.

VI

For the foregoing reasons, Wheat's request for a certificate of appealability is DENIED.

-10-