**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

**No. 00-50821**

---

**SAMUEL CLARK GALLAMORE,**

**Petitioner-Appellant,**

**v.**

**JANIE COCKRELL,**
**Director, Texas Department of Criminal Justice,**
**Institutional Division**

**Respondent-Appellee,**

---

**Appeal from the United States District Court**
**for the Western District of Texas**
**San Antonio Division**
(5:98-CV-428)
October 4, 2001

---

Before DAVIS, JONES and DeMOSS, Circuit Judges.

PER CURIAM:[*]

     Samuel Clark Gallamore was convicted of capital murder for participating in the beating and stabbing deaths of an elderly couple and their daughter. The Texas courts have rejected Gallamore's direct appeals as well as his request for state habeas relief. The federal district court denied Gallamore's request for federal habeas relief, but granted a certificate of appealability.

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Gallamore now raises two challenges to his conviction: (1) the trial court violated Gallamore's due process rights as defined by Simmons v. South Carolina, 512 U.S. 154, 114 S.Ct. 2187 (1994), by failing to inform the jury that Gallamore was ineligible for parole for thirty-five years; and (2) trial counsel rendered ineffective assistance. For the reasons that follow, we affirm the judgment of the district court.

## I. BACKGROUND

On March 29, 1992, Gallamore and an accomplice, James Steiner, drove to the home of Verle Clayton Kenny ("Kenny") to rob it. On their way to the robbery, the miscreants agreed to kill anyone who tried to hinder them.

Three people were present at the Kenny residence on the night of the robbery: Kenny, who was 83 years old; Julianna Kenny, who was 74 years old and paralyzed on her left side; and Adrienne Arnot, Julianna Kenny's 41 year old daughter.

According to Gallamore's confessions[1], he walked to the Kennys' door while Steiner, who was carrying a tire iron and a cedar branch, hid in the shadows. Arnot answered the door and Gallamore forced his way into the home. Gallamore grabbed Arnot and "took her down" while his accomplice rushed in and began beating Kenny and Arnot with the tire iron and cedar branch.

---

[1] Gallamore made two detailed confessions shortly after his arrest. Transcripts and tape recordings of both confessions were presented to the jury. Gallamore also testified in his own defense at trial and admitted to participating in the robbery.

2

Gallamore then went to the kitchen and obtained a large knife. Gallamore returned to the front of the house, stabbed Mrs. Kenny, and then beat her in the head with the cedar branch. Gallamore and Steiner continued stabbing and beating all three victims until they were dead. Gallamore took several silver spoons, cash from Arnot's purse, and other small items from the home. After his arrest, Gallamore led law enforcement officers to the location where he had buried the property taken from the Kenny home.

Gallmore was indicted by a Kerr County, Texas, grand jury for intentionally and knowingly murdering more than one person during the same criminal transaction. Venue for Gallamore's trial was transferred to Comal County. The guilt-innocence phase of Gallamore's trial began on January 27, 1994. On February 1, after deliberating for less than two hours, the jury found Gallamore guilty of capital murder.

During the punishment phase of Gallamore's trial, the state argued Gallamore's future dangerousness by presenting the testimony of three law enforcement officers regarding Gallamore's reputation in the community for unlawfulness and violence. The state also presented Gallamore's prior criminal history, including evidence of a prior arrest for assaulting his own sister. Additionally, the state presented evidence indicating that Gallamore threatened to escape if convicted. Gallamore's counsel offered the testimony of several friends and family members in an

attempt to rebut the state's evidence regarding future dangerousness. Gallamore's counsel also offered the testimony of Dr. Wendell Dickerson, a forensic psychologist, concerning Gallamore's mental health and potential future dangerousness.

The jury determined that Gallamore posed a threat of future violence, that Gallamore had intended to kill the deceased, and that there were not sufficient mitigating circumstances to warrant a life sentence. Based on these jury findings, the trial court sentenced Gallamore to death in accordance with Texas law.

Gallamore appealed his conviction and sentence. The Texas Court of Criminal Appeals, in an unpublished opinion, affirmed. Gallamore v. State, No. 71,856 (Tex. Crim. App. 1995). Gallamore did not petition for certiorari in the United States Supreme Court. Gallamore's application for state habeas relief was rejected by the Texas courts. Ex Parte Gallamore, App. No. 36,958-01 (Tex. Crim. App. 1998).

Gallamore promptly filed his federal habeas corpus petition in federal district court. The district court denied Gallamore's request for habeas relief in 94-page opinion, but granted a certificate of appealability ("COA") on all issues raised in the habeas petition. Gallamore v. Johnson, No. SA-98-CA-428-EP (W.D.Tex. 2000). This appeal followed.[2]

---

[2]    The district court granted Gallamore a COA on the four issues raised in his habeas petition, but Gallamore has raised only two of these issues on appeal. Failure to brief the other two issues on appeal constitutes waiver. See, e.g., Lara v. Johnson, 141 F.3d 239, 242 (5th Cir. 1998).

4

## II. DISCUSSION

### A.    Standard of Review

Gallamore's habeas petition, filed in the district court after April 24, 1996, is reviewed in accordance with the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Lindh v. Murphy, 521 U.S. 320, 336, 117 S.Ct. 2059, 2068 (1997). AEDPA review of Gallamore's habeas petition "requires deference to the state habeas court's adjudication of [Gallamore's] claims on the merits, unless that adjudication: (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' § 2254(d)(1), or (2) constituted an 'unreasonable determination of the facts in light of the evidence presented in the State court proceeding,' § 2254 (d)(2)." Wheat v. Johnson, 238 F.3d 357, 360 (5th Cir. 2001) (citing 28 U.S.C. § 2254).

### B.    The *Simmons* Issue

Gallamore argues that the trial court violated his due process rights as defined in Simmons v. South Carolina, 512 U.S. 154, 114 S.Ct. 2187 (1994), by refusing to instruct the jury that Gallamore would not be eligible for parole for thirty-five years if given a life-sentence.[3]    Simmons mandates that "where the defendant's future dangerousness is at issue, and state law

---

[3]At the time of Gallamore's trial, a Texas capital murder defendant who received a life sentence was ineligible for parole for at least thirty-five years. See Tex. Code Crim. Proc. Ann. art. 42.18 § 8(b)(2) (Vernon Supp. 1994). Texas law did not provide a life-without-parole alternative to the death penalty.

5

prohibits the defendant's release on parole, due process requires that the sentencing jury be informed that the defendant is parole ineligible." 512 U.S at 156, 114 S.Ct. at 2190. Gallamore contends that Simmons applies because "the minimum length of time the petitioner would be required to serve [if given a life sentence] far exceeds the commonly held beliefs of the jurors." Petitioner's Brief at 22. Gallamore argues that the trial court's failure to offer an instruction relating to parole eligibility allowed his jurors to employ "misconceived ideas about parole." Gallamore offers affidavits of three of the jurors in support of this argument, and contends that he is entitled to an evidentiary hearing to demonstrate his jurors' misunderstanding of Texas parole law.

Gallamore's reliance on Simmons is misplaced. "In Simmons, the Supreme Court expressly held that its ruling does *not* apply to Texas, because it does not have a life-without-parole alternative to capital punishment." Tigner v. Cockrell, No. 01-50238, slip op. at 5114 (5th Cir. Aug. 28, 2001) (citing Simmons, 512 U.S. at 168 n. 8, 114 S.Ct. at 2196). A parole-ineligibility instruction is not required unless the defendant is *completely* ineligible for parole under state law. Id. (citing Ramdass v. Angelone, 530 U.S. 156, 167, 120 S.Ct. 2113, 2120 (2000)). This court has repeatedly refused to apply Simmons to Texas convictions. See, e.g., Tigner, slip op. at 5114-15; Wheat, 238 F.3d at 361-62.

6

Therefore, the state habeas court's rejection of Gallamore's Simmons challenge was neither "contrary to, [nor] involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

In his brief, Gallamore concedes that this court has refused to apply Simmons to Texas convictions.  Nevertheless, he argues that the reasoning of Simmons requires its extension to the facts of this case.  Such an extension would constitute an impermissible "new" rule of constitutional criminal law barred in habeas review by the Teague non-retroactivity principle.  Tigner, slip op. at 5115 (citing Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060 (1989); Wheat, 238 F.3d at 361-62).  Therefore, Simmons does not apply to the facts of this case.[4]

## C.    Ineffective Assistance of Counsel

Gallamore next argues that the district court erred by refusing to grant his request for an evidentiary hearing regarding his contention that he received ineffective assistance of counsel. Gallamore claims that his counsel failed to: (1) adequately develop and present mitigating mental health evidence through the expert witness; (2) obtain the assistance of co-counsel; and (3) call the

---

[4]    Gallamore also argues that he is entitled to an evidentiary hearing to resolve factual issues relating to his Simmons claim.  Gallamore is entitled to an "evidentiary hearing to prove his contentions only if we believe that he is entitled to relief if his allegations are proven true." Moawad v. Anderson, 143 F.3d 942, 947-48 (5th Cir. 1998).  Because his Simmons claim is without merit, Gallamore is not entitled to an evidentiary hearing.

trial court's attention to a state court opinion that allegedly would have entitled defense counsel to question jurors "extensively" about their knowledge of parole laws.

Under the well-known Strickland test, "[a] habeas petitioner alleging ineffective assistance must demonstrate both constitutionally deficient performance by counsel and actual prejudice as a result of such ineffective assistance." Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984)). Establishing deficient performance requires the petitioner to "prove that the performance of counsel fell below an objective standard of reasonableness." Id. The petitioner must show "'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" Moawad v. Anderson, 143 F.3d 942, 946 (5th Cir. 1998) (quoting Strickland, 466 U.S. at 668, 104 S.Ct. at 2064). The petitioner must overcome a strong presumption that the conduct of his trial counsel falls within a wide range of reasonable professional assistance. Strickland, 466 U.S. at 687-91, 104 S.Ct. at 2064-66. To demonstrate prejudice, the petitioner "must establish that the attorney's errors were so deficient as to render the verdict fundamentally unfair or unreliable." Moawad, 143 F.3d at 946 (citing Strickland, 466 U.S. at 695, 104 S.Ct. at 2068-69). When contesting counsel's performance during the punishment stage of

8

trial, the petitioner "must establish a 'reasonable probability' that the jury would not have imposed the death sentence in the absence of errors by counsel." Id. Gallamore is entitled to habeas relief only if the state court's "decision rejecting his ineffective-assistance claim was either 'contrary to, or involved an unreasonable application of' established [Federal] law." Williams v. Taylor, 529 U.S. 362, 391, 120 S.Ct. 1495, 1512 (2000).

### 1. Counsel's Mental Health Strategy

In his first ineffective-assistance challenge, Gallamore asserts that his attorney failed to properly develop and present mitigating mental health evidence. Counsel waited until the eve of trial to secure the assistance of Dr. Dickerson, leaving Dickerson too little time to examine Gallamore adequately. Moreover, a "medically trained" expert rather than a psychologist should have been hired by his attorney to investigate the possibility of organic brain damage caused by Gallamore's long history of drug abuse.

In support of his argument, Gallamore relies in part on Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087 (1985). In Ake, the Court held that when a defendant demonstrates that "his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the

9

defense." Ake, 470 U.S. at 83, 105 S.Ct. at 1096. Gallamore's due process right of access to a mental health expert has not been violated in this case. Dr. Dickerson evaluated Gallamore and testified on Gallamore's behalf. Gallamore's reliance on Ake is misguided in that Gallamore has not raised a due process challenge. Rather, Gallamore asserts that his counsel's performance was deficient in violation of the Strickland standard. Gallamore, now unsatisfied with Dr. Dickerson's testimony, asserts that his trial counsel should have prepared a better mental health strategy and put together a more qualified and prepared team of mental health experts to testify on Gallamore's behalf.

Gallamore's arguments regarding the effectiveness of his mental health expert do not establish ineffective assistance of counsel. First, most of Gallamore's arguments hinge on a comparison of Dr. Dickerson's testimony with that of the health expert who testified in the accomplice's trial. This comparison is largely irrelevant because Gallamore and his accomplice do not share identical mental health histories. Moreover, the state court expressly found that Dr. Dickerson was a competent mental health expert who had sufficient time to prepare for trial and who thoroughly and competently testified about mitigating evidence, and Gallamore's future dangerousness. In any event, Gallamore's ineffective assistance claim should focus on the conduct of counsel rather than on the effectiveness of a witness. The attorney's

10

decision to employ Dr. Dickerson rather than the Steiner's mental health expert is a decision of trial strategy that "we must presume . . . [falls] within the 'wide range of reasonable professional assistance.'" Moawad, 143 F.3d at 948 (quoting Strickland, 466 U.S. at 689, 104 S.Ct. at 2065).

This is not a case where Gallamore's counsel failed to investigate his client's mental health or failed to present relevant mitigating evidence. See, e.g., Lockett v. Anderson, 230 F.3d 695, 716 (5th Cir. 2000) (holding that the failure to conduct a minimal investigation of a defendant's possible mitigation evidence renders counsel's performance deficient). Gallamore's counsel acted reasonably by interviewing family members and friends, and by employing Dickerson to examine Gallamore. Dickerson and seven lay witnesses testified as to mitigating evidence, and the district court correctly observed that an abundance of testimony relating to Gallamore's mental health was presented during the punishment phase of trial. Furthermore, the state habeas court found that counsel acted reasonably in hiring Dickerson and offering his testimony at trial. Gallamore has not cast doubt on the reasonableness of the state court's conclusion that his counsel's performance was constitutionally acceptable.

This prong of Gallamore's ineffective-assistance argument also fails because he has failed to established that any prejudice arose from the allegedly deficient conduct. Gallamore provides

11

little evidence indicating what another mental health expert might have revealed that would probably have altered the sentence. See Crane v. Johnson, 178 F.3d 309, 315 (5th Cir. 1999) (the defendant did not prove prejudice because he "produced no persuasive psychiatric evidence in the district court that if produced at trial, would have undermined confidence in the resulting verdict."). Gallamore's key evidence regarding prejudice is the affidavit of an expert who reviewed Dr. Dickerson's testimony, but never personally examined Gallamore. This court has previously found a similar affidavit unpersuasive. See Dowthitt v. Johnson, 230 F.3d 733, 746 (5th Cir. 2000) (finding an expert affidavit to be insufficient where it was "based on [the expert's] review of a portion of the paper record, and [the expert] did not personally interview [the defendant]."). The state court's finding that no prejudice resulted from the retention of Dr. Dickinson was reasonable.

2.   Appointment of Co-counsel

Gallamore next argues that his attorney offered ineffective assistance by failing to secure the assistance of co-counsel. This argument is based on an initial indication to the trial court by Gallamore's trial counsel that the appointment of co-counsel would be useful. Co-counsel was appointed, but only assisted during voir dire. Gallamore contends that co-counsel should have been retained for the duration of the trial, and that

the absence of co-counsel prejudiced Gallamore because co-counsel would have adequately prepared an effective mental health expert to testify on Gallamore's behalf.

The state habeas court rejected this argument and found that Gallamore's counsel had acted reasonably in hiring additional counsel to assist only in the voir dire process. The state habeas court also concluded that the absence of co-counsel during the remainder of the trial did not prejudice Gallamore.

Outside of his conclusory allegations, Gallamore has not demonstrated how appointment of co-counsel would have altered the outcome of his trial. There is no constitutional guarantee of the assistance of two attorneys in a capital case. Counsel's decision to retain co-counsel only during voir dire does not constitute ineffective assistance.

### 3. Counsel's Failure to Bring *Jackson v. State* to the Trial Court's Attention

Gallamore also complains that his counsel failed to call the trial court's attention to Jackson v. State, 822 S.W.2d 18 (Tex. Crim. App. 1991). Jackson, according to Gallamore, permits counsel to examine jurors "extensively" during voir dire about their ability to obey an instruction forbidding consideration of parole. Gallamore contends that Jackson should have been cited when the trial court stopped defense counsel from questioning a potential juror further about the juror's understanding of Texas

parole law. Gallamore attempts to establish prejudice by arguing that if Jackson has been cited to the court and applied, then counsel would have been able to question more extensively and strike for cause any venire members who had reservations about issuing a life sentence for fear of early parole.

Gallamore's reliance on Jackson is misplaced. Jackson explains that if a potential juror is "shown to be unable to disregard parole in determining the punishment issues, he would have been subject to a challenge for cause." 822 S.W.2d at 27. However, Jackson does not stand for the proposition that jurors must be extensively questioned about their understanding of parole during voir dire. In fact, on direct appeal of Gallamore's conviction, the Texas Court of Criminal Appeals indicated that "extensive" questioning is inappropriate, explaining that "a voir dire inquiry which predicates a parole question with a legal description of the attributes of a life sentence vis a vis parole, is not a proper query." Gallamore v. State, No. 71,856 (Tex. Crim. App. December 13, 1995); see also, Howard v. Texas, 941 S.W.2d 102, 116 (Tex. Crim. App. 1996) (en banc) (holding the same).

Where a petitioner's argument related to the failure of counsel to raise a case lacks merit, counsel's failure to raise the case is not prejudicial. Neal v. Cain, 141 F.3d 207, 214-15 (5th Cir. 1998). Even if Gallamore is correct in his assertion that Jackson should have been raised, defense counsel is not obliged to

14

raise every non-frivolous issue in order to offer effective assistance. Counsel's actions during voir dire are viewed as trial strategy and do not form the basis for an ineffective assistance claim unless the voir dire strategy is so unreasonable that it "permeates the entire trial with obvious unfairness." Teague v. Scott, 60 F.3d 1167, 1172 (5th Cir. 1995). Counsel's failure to raise Jackson does not establish a "reasonable probability of a different result" that "undermines confidence in the result" of Gallamore's trial. West v. Johnson, 92 F.3d 1385, 1400 (5th Cir. 1996). Counsel's failure to raise Jackson does not establish a reasonable probability of a different outcome that undermines confidence in the verdict. The state court's finding that counsel did conduct extensive voir dire and its conclusion rejecting prejudice from the failure to cite Jackson reasonably apply Federal law.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court denying federal habeas relief.