**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

**No. 01-11387**

**ROGER DALE VAUGHN,**

**Petitioner-Appellant,**

**versus**

**JANIE COCKRELL, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,**
**INSTITUTIONAL DIVISION,**

**Respondent-Appellee.**

**Appeal from the United States District Court**
**for the Northern District of Texas**
**(7:98-CV-005-R)**

July 25, 2002

Before DAVIS, BARKSDALE, and DEMOSS, Circuit Judges.

PER CURIAM:[*]

Federal habeas relief having been denied for Roger Dale Vaughn's Texas capital murder conviction and death sentence, at issue is whether a certificate of appealability (COA) should issue for the following claims: the jury should have been informed that, had Vaughn been sentenced to life in prison, he would not have been eligible for parole for 35 years; the evidence is insufficient to support the jury's future dangerousness finding; and his counsel were ineffective in two respects. **COA DENIED.**

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

On 14 October 1991, Vaughn escaped from the jail in Lubbock County, Texas. He sought out a friend, Shaw; told him he had been recently released from prison; and asked if Shaw would drive him "to a few places in town".

Shaw agreed. Later that evening, when Shaw offered to loan Vaughn money, Vaughn replied that Shaw "didn't need the money where he was going" and struck him on the head, rendering him unconscious.

Shaw regained consciousness and jumped from their moving automobile. Vaughn caught up with him; again beat him unconscious; and left him in a field, partially paralyzed. Vaughn stole Shaw's identification and fled Lubbock in Shaw's automobile.

The next evening (15 October), Vaughn visited friends in Electra, Texas. That night, he telephoned another friend, the son of the 84-year-old victim. Instead, the victim answered the telephone. Vaughn told her he would be in Vernon, Texas, the next evening around dinner time, and asked whether he could visit her home. The victim agreed. She told a companion present during the telephone conversation that her son's friend was stopping by, but that she would not prepare dinner for him.

After arriving the next day (16 October) in Vernon, Vaughn burglarized the Pucketts' home (his aunt and uncle), stealing two pairs of boots and two rifles. He pawned the rifles in Wichita Falls, Texas, and returned to Vernon.

2

That evening, between 6:30 and 7:00 p.m., Vaughn entered the victim's home in Vernon.  Later inspection showed:  the home had been ransacked and property, including the victim's checkbook, driver's license, and jewelry, was missing; the victim had been strangled; and her body had been dragged across the floor. (Although the evidence indicated the victim had been sexually assaulted, this was not a theory upon which Vaughn was indicted or upon which the State relied.)

Vaughn traveled again to Wichita Falls and pawned the victim's jewelry, including her wedding ring.  Vaughn also cashed several of her checks, telling one vendor he was the victim's son and telling another he was her husband.

The next day (17 October), Vaughn was arrested in Wichita Falls after he attempted unsuccessfully to cash another of the victim's checks.  When he was arrested, he was wearing one of the pairs of boots stolen from the Pucketts; and he also had in his possession the victim's driver's license and checkbook.  In addition, several pawn receipts were found in his pocket, with the claim checks made out to Shaw.  (In fact, a pawn broker refused to loan Vaughn money because he did not fit the physical description provided on Shaw's identification.  The merchant copied the license plate number of Vaughn's vehicle; it was later identified as belonging to Shaw.)

In 1992, Vaughn was convicted of capital murder in violation of TEX. PENAL CODE ANN. § 19.03(a)(2) (defining capital murder as,

*inter alia*, a "murder in the course of committing or attempting to commit ... burglary [or] robbery...." ) and was sentenced to death.

In 1995, the conviction and sentence were affirmed by the Texas Court of Criminal Appeals and *certiorari* was denied by the Supreme Court of the United States. *Vaughn v. State*, No. 71,495 (Tex. Crim. App. 29 Mar. 1995) (unpublished) (*Vaughn*), *cert. denied*, 515 U.S. 1189 (1995).

Vaughn sought state habeas relief; the trial court recommended denial. *Ex parte Vaughn*, No. 8938-A (46th Dist. Ct. of Wilbarger County, Tex. 31 Oct. 1997) (unpublished) (*Ex parte Vaughn*). The Texas Court of Criminal Appeals accepted the recommendation. *Ex parte Vaughn*, No. 29,416-01 (Tex. Crim. App. 10 Dec. 1997) (unpublished).

In June 1998, Vaughn filed for federal habeas relief. In July 2001, the petition was referred to the magistrate judge, who recommended denial. *Vaughn v. Johnson*, No. 7:98-CV-005-R (N.D. Tex. 31 July 2001) (*Vaughn-USDC*). The district judge accepted the recommendation and later denied a COA.

## II.

At issue is whether Vaughn is entitled to a COA for any of three claims: the jury should have been instructed on his parole eligibility if sentenced to life in prison; the evidence is insufficient to support the jury's future dangerousness finding; and his counsel were ineffective in not objecting on a certain

4

basis to extraneous offense evidence and not interviewing a claimed alibi witness.

The Antiterrorism and Effective Death Penalty Act (AEDPA) applies, because Vaughn's federal petition was filed after AEDPA's 1996 effective date. *See* **Lindh v. Murphy**, 521 U.S. 320, 336 (1997). Under AEDPA, Vaughn must be granted a COA in order to appeal the habeas-denial. 28 U.S.C. § 2253(c)(1)(A).

A COA may issue only upon "a substantial showing of the denial of a constitutional right". 28 U.S.C. § 2253(c)(2). To meet this standard, Vaughn must show "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further". **Slack v. McDaniel**, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted).

For a claim denied on the merits, Vaughn must demonstrate "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong". **Id**. (COA-merits-standard).

The ruling on whether a COA should issue "must be made by viewing ... [Vaughn]'s arguments through the lens of the deferential scheme laid out in 28 U.S.C. § 2254(d)". **Barrientes v. Johnson**, 221 F.3d 741, 772 (5th Cir. 2000), *cert. dismissed*, 531 U.S. 1134 (2001). Under that scheme, a federal habeas court must

5

defer to the decision of a state court where it has adjudicated a claim on the merits, unless the state court's decision is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or ... resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding".  28 U.S.C. § 2254(d)(1) & (2).

A state court decision is "contrary to [] clearly established Federal law, as determined by the Supreme Court of the United States ... if the state court arrives at a conclusion opposite to that reached by th[e] Court on a question of law or if the state court decides a case differently than th[e] Court has on a set of materially indistinguishable facts".  **Williams v. Taylor**, 529 U.S. 362, 412-13 (2000).

A state court decision "involve[s] an unreasonable application of [] clearly established Federal law, as determined by the Supreme Court of the United States ... if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case".  **Id**.

For these questions, as well as whether the state court decision was based on an unreasonable determination of the facts in the light of the evidence presented in the state proceeding, the

state court's findings of fact are presumed to be correct *unless* that presumption is rebutted by "clear and convincing evidence". 28 U.S.C. § 2254(e)(1).

A.

Vaughn contends that, under *Simmons v. South Carolina*, 512 U.S. 154 (1994), his Fifth and Eighth Amendment, as well as his Fourteenth Amendment due process, rights were violated because the jury was not instructed about his parole eligibility. As of Vaughn's 1992 conviction, a person convicted of capital murder, but who received a life sentence, became eligible for parole after serving 35 years. TEX. CODE CRIM. PROC. ANN. art. 42.18, § 8(b)(2) (Vernon 1992).

In *Simmons*, the Supreme Court held that, where

> the State rests its case for imposing the death penalty at least in part on the premise that the defendant will be dangerous in the future, the fact that the *alternative* sentence to death is *life without parole* will necessarily undercut the State's argument regarding the threat the defendant poses to society. Because truthful information of parole eligibility allows the defendant to "deny or explain" the showing of future dangerousness, due process plainly requires that he be allowed to bring it to the jury's attention by way of argument by defense counsel or an instruction from the court.

512 U.S. at 168-69 (emphasis added). But, for "a State in which *parole is available* [such as Texas], how the jury's knowledge of parole availability will affect the decision whether ... to impose the death penalty is speculative, and we shall not lightly second-

7

guess a decision whether ... to inform a jury of information regarding parole". *Id*. at 168 (emphasis added).

The state habeas trial court held this claim foreclosed by *Smith v. State*, 898 S.W.2d 838 (Tex. Crim. App.), *cert. denied*, 516 U.S. 843 (1995), which held that, under the Texas death penalty scheme, *Simmons* does not require a parole eligibility instruction. *Ex parte Vaughn*, at 3.

In considering this claim, the district court relied on *Wheat v. Johnson*, 238 F.3d 357, 361 (5th Cir.), *cert. denied*, 532 U.S. 1070 (2001), and *Allridge v. Scott*, 41 F.3d 213, 221-22 (5th Cir. 1994), *cert. denied*, 514 U.S. 1108 (1995). *Wheat* stated that our circuit has "repeatedly recognized that the *Simmons* rule applies only where there is a life-without-possibility-of-parole alternative to the death penalty, an alternative that does *not* exist in Texas", 238 F.3d at 361 (emphasis added); and *Allridge* read *Simmons* to hold that

> due process requires the state to inform a sentencing jury about a defendant's parole ineligibility *when, and only when*, (1) the state argues that a defendant represents a future danger to society, and (2) the defendant is legally ineligible for parole. Because Texas did not statutorily provide for parole ineligibility at the time of [the petitioner's] conviction, we find [the petitioner's] reliance on *Simmons* to be unavailing.

8

41 F.3d at 222 (emphasis added; footnote omitted). *See **Ramdass v. Angelone***, 530 U.S. 156, 166 (2000) ("The parole-ineligibility instruction is required only when, assuming the jury fixes the sentence at life, the defendant is *ineligible* for parole under state law." (Emphasis added.)).

In district court, Vaughn also asserted that, although he would have been eligible for parole after 35 years had he been given a life sentence, such a sentence is a *de facto* life-without-the-possibility-of-parole sentence and should be subject to the ***Simmons*** holding. The district court rejected this contention, holding that Vaughn was asking the court to adopt a new rule of constitutional law, which it could not do under ***Teague v. Lane***, 489 U.S. 288, 301 (1989). In so ruling, the district court again relied on ***Wheat***, which stated: "To hold that a lengthy parole ineligibility is the *de facto* equivalent of a life sentence without the possibility of parole ... would create a new rule under the law of our Circuit". 238 F.3d at 361. Accordingly, ***Wheat*** held the contention ***Teague***-barred. ***Id***.

Vaughn also asserted in his state and federal petitions that the absence of a parole eligibility instruction violates the Eighth Amendment. The district court, however, did not address this issue separately. In his COA request, Vaughn continues to advance this contention.

*Simmons* granted relief on due process grounds and "express[ed] no opinion on ... whether the result reach[ed] ... [was] compelled by the Eighth Amendment". 512 U.S. at 162 n.4. Our court has consistently held, however, that, with respect to the Texas death penalty scheme, the Eighth Amendment does not require a parole-eligibility instruction. *See, e.g.*, **Tigner v. Cockrell**, 264 F.3d 521, 525 (5th Cir. 2001) ("the Fifth Circuit has held that neither the due process clause nor the Eighth Amendment requires a state court to give jury instructions regarding parole ineligibility in Texas."), *cert. denied*, 122 S. Ct. 1177 (2002).

Ultimately, Vaughn reargues the above-discussed merits of this parole-eligibility claim in his COA request. As discussed, his contentions are foreclosed by circuit precedent. He has not addressed, much less satisfied, the earlier described COA-merits-standard.

B.

At the punishment phase, the jury affirmatively answered the special issue for whether it found "from the evidence beyond a reasonable doubt that there is a probability that [Vaughn] would commit criminal acts of violence that would constitute a continuing threat to society". For future dangerousness, Vaughn contends the evidence proffered by the State is legally insufficient.

In considering this claim on direct appeal, the Court of Criminal Appeals employed the standard from **Jackson v. Virginia**,

10

443 U.S. 307, 319 (1979) (emphasis added): whether "*any* rational trier of fact could have found the essential elements of [Vaughn's future dangerousness] beyond a reasonable doubt". *Vaughn*, at 1. It also noted that a jury may consider, *inter alia*, the following factors in assessing future dangerousness: (1) "the circumstances of the capital offense"; (2) "the calculated nature of the defendant's acts"; (3) "the forethought and deliberateness exhibited by the crime's execution"; (4) "the existence of a prior criminal record, and the severity of the prior crimes"; (5) "the defendant's age and personal circumstances at the time of the offense"; (6) "whether the defendant was acting under duress or the domination of another at the time of the commission of the offense"; (7) "psychiatric evidence"; and (8) "character evidence". *Keeton v. State*, 724 S.W.2d 58, 61 (Tex. Crim. App. 1987).

After considering the circumstances leading up to and surrounding the murder, the Court of Criminal Appeals also considered Vaughn's extensive criminal past. *Vaughn*, at 3-4.

> On February 28, 1973, [Vaughn] was court martialed and found guilty by the Army for being absent without leave.... On April 23, 1973, [Vaughn] was discharged from active duty for "unsuitability - character and behavior disorders". On December 14, 1977, he was convicted of burglary of a habitation and placed on 10 years probation. Two and a half months later on February 28, 1978, that probation was revoked for the aggravated assault of two individuals whom he cut with a knife. There was no final conviction for the aggravated assaults.

On February 24, 1986, [Vaughn] was found guilty of receiving stolen property in Wyoming.... Five months later on June 4, 1986, [Vaughn] was convicted of forgery....

On August 8, 1991, [Vaughn] was arrested for forgery and robbery in Lubbock, Texas. The victim in the robbery case was an 86 year old woman. As [Vaughn] fled the scene, he threatened several of the bystanders. It was for these charges that [Vaughn] was being held in the Lubbock County Jail [when he escaped and committed the subject murder].

*Id*. at 4. The Court of Criminal Appeals denied relief on this issue, concluding:

[Vaughn's] extensive criminal past included both violent and non-violent acts. The events leading up to the instant crime also indicate a propensity for escalating and continued violence. The evidence of the crime itself, together with [Vaughn's] long history of sometimes violent criminal activity, is sufficient to support a rational jury finding that [Vaughn] represents a continuing threat to society.

*Id*.

In considering this claim, the district court reviewed Vaughn's extensive criminal history and then set forth in detail his actions leading up to, during, and after the murder:

Looking ... at the facts surrounding the crime, it is clear that Vaughn acted alone in a manner that was both calculated and brutal. His deliberate actions took place – not in the heat of the moment – but over the course of two days. As described by the [Court of Criminal Appeals], Vaughn viciously attacked Shaw twice, after Shaw had tried to help him, and then left him for dead after stealing his identification. Next, after arranging a visit with his eighty-four year-old victim, he strangled her, dragged her body across the

12

> kitchen floor, and may have sexually assaulted her. Evidence at trial also revealed what appeared to be a bite mark on [the victim's] cheek. After murdering [the victim] and leaving her in a pool of blood, Vaughn stole and then pawned her jewelry including her wedding ring.

*Vaughn-USDC*, at 13-14 (internal citations omitted). Accordingly, the district court denied relief on this issue.

Once again, Vaughn does not address the COA-merits-standard; instead, he attempts to reargue the merits of this claim. Essentially, he contends that a balancing of the eight factors identified in **Keeton**, *supra*, "militate against imposition of the death penalty in this case", and "[u]nder these circumstances, the evidence does not enable a rational trier-of-fact to conclude beyond a reasonable doubt a probability that [he] would commit criminal acts of violence against society".

Vaughn maintains, *inter alia*, that: the "present case does not involve torture, disfigurement, necrophilia, body mutilation, or other traditional circumstances that would justify a death sentence without additional evidence"; his age at the time of trial, 37, should have been a mitigating factor because at "thirty-seven, [Vaughn] had not yet entered the mellowing years of his middle-age"; and, concerning his prior criminal record, "[Vaughn's] general record of law-abiding behavior exhibits an unaggressive, non-violent character associated with reform and rehabilitation".

13

To say the least, these contentions are totally without merit. In any event, Vaughn has not satisfied the COA-merits-standard.

## C.

Vaughn next claims counsel were ineffective in not objecting, pursuant to Texas Rule of Criminal Evidence 403, to extraneous offense evidence, and in not investigating a claimed alibi witness. For the COA-merits-standard for each of the two claimed independent bases for ineffective-assistance, Vaughn must address both parts of the well-known ineffective-assistance test: (1) whether counsel's performance was deficient in that it "fell below an objective standard of reasonableness"; and (2) whether the deficient performance resulted in prejudice — "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different". *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984).

## 1.

At trial, the State introduced evidence of Vaughn's escape from prison shortly before the murder, his burglary and assault of Shaw, and his burglary of the Pucketts' (his aunt and uncle) home. *Vaughn*, at 6. This was offered to demonstrate that Vaughn formulated the requisite intent to rob the victim prior to murdering her. *Id*. at 7. Although Vaughn's counsel objected under Texas Rule of Criminal Evidence 404(b), Vaughn maintains an objection should have also been made under Texas Rule of Criminal

14

Evidence 403.  In numerous other instances, counsel did object pursuant to that Rule.  ("Effective March 1, 1998, the Texas Rules of Criminal Evidence and the Texas Rules of Evidence were merged into the new Texas Rules of Evidence.  Rule 403 of the Rules of Evidence is the same as former Rule 403 of the Rules of Criminal Evidence.  Thus, the scope and application of the new rule would be the same as under the old one.  Because the case was tried before the effective date of the new rules, however, we will apply the former Texas Rules of Criminal Evidence." *Mozon v. State*, 991 S.W.2d 841, 844 n.2 (Tex. Crim. App. 1999).)

As of Vaughn's trial, Rule of Criminal Evidence 404(b) provided:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....

TEX. R. CRIM. EVID. 404(b) (West 1992).  Rule of Criminal Evidence 403 provided:

> Although relevant, evidence may be excluded if the *probative value is substantially outweighed* by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

TEX. R. CRIM. EVID. 403 (West 1992) (emphasis added).

15

On direct appeal, Vaughn challenged the admission of this evidence under Rules 404(b) *and* 403. **Vaughn**, at 6, 9. In considering whether the evidence was admissible under Rule 404(b), the Court of Criminal Appeals first noted that, at trial, "defense counsel postulated that [Vaughn] never formed the 'intent' to rob the victim until *after* the commission of the murder". *Id*. at 6 (emphasis added). The court then acknowledged the State's contention that the "evidence of the extraneous offenses was relevant to establish [Vaughn] formulated the intent to rob [the victim] before he killed her". *Id*. at 7.

The court upheld admission under Rule 404(b):

> While the State ... could have relied solely upon the circumstantial evidence to persuade the jury of [Vaughn's] intent, they were not prevented from producing other relevant evidence to strengthen that inference. [Vaughn's] escape from the Lubbock County Jail, the robbery of a friend, and the burglary of his relatives' home during the short hours before the instant offense, all make it less probable that his entry into [the victim's] home, whether consensual or not, was a purely social call.

*Id*. at 8.

Concerning Vaughn's claim that the evidence was inadmissible under Rule 403, the court held that, because he had not objected at trial on that basis, any error was not preserved. *Id*. at 9 (citing **Montgomery v. State**, 810 S.W.2d 372, 388 (Tex. Crim. App. 1991)). (During trial, as noted, counsel had repeatedly raised Rule 403 objections to other evidence.)

16

In his state habeas application, Vaughn claimed ineffective assistance for not objecting under Rule 403. The state courts rejected this claim, holding that the "proffered evidence was admissible" and that, based upon counsels' affidavits, the

> acts or admissions were not outside the range of professional competent assistance, and even if [they] were, there is not a reasonable probability that the result of the trial would have been different absent the deficient conduct, if any.

*Ex parte Vaughn*, at 4.

Concerning this claim, and relying on *Montgomery*, 810 S.W.2d 372, the district court discussed the mechanics of Rule 403. It first noted that, although evidence may be admissible under Rule 404(b), it may be excluded under Rule 403 "on the ground that the probative value of the evidence ... is nevertheless *substantially* outweighed by ... the danger of unfair prejudice". *Vaughn-USDC*, at 28 (emphasis in original; internal quotation marks omitted). It also noted "that in balancing the probative nature of the evidence against its prejudicial effect ... the presumption is ... that probativeness is the weightier consideration". *Id*. at 28-29 (internal quotation marks omitted). And, it observed that "the approach under Rule 403 [is] to favor the admissibility of relevant evidence, and ... a presumption exist[s] under the Rule that relevant evidence will be more probative than prejudicial". *Id*. at 29.

17

After considering this presumption, the context in which the extraneous offense evidence was introduced, and the above-discussed Court of Criminal Appeals holding concerning the relevancy of the evidence under Rule 404(b), the district court held there was neither deficient-performance nor prejudice.

Concerning deficient-performance, it stated:

> In light of the highly relevant nature of the extraneous crimes evidence to the crucial issue in the case of when Vaughn formed the intent to rob [the victim] and its admissibility to aid the State in meeting its burden of proof on this issue, the Court finds that any objections by Vaughn's attorneys under Rule 403 would likely have been futile.

*Id*. at 33; *see* **Emery v. Johnson**, 139 F.3d 191, 198 (5th Cir. 1997) ("failure to assert a meritless objection cannot be grounds for a finding of deficient performance"), *cert. denied*, 525 U.S. 969 (1998).

As for prejudice, the district court stated that Vaughn's

> argument presupposes that the trial court would have sustained the Rule 403 objection and kept the evidence out.  In view of the extremely probative nature of the extraneous crimes evidence to Vaughn's intent to commit capital murder and Rule 403's presumption of admissibility, the Court finds Vaughn's assumption ... to be based on mere speculation.

**Vaughn-USDC**, at 33.

In his COA application, Vaughn states: "Was the testimony regarding the extraneous offenses relevant to the issue of who killed the victim in the instant capital murder case?  Contrary to

18

the Magistrate's finding ..., Petitioner asserts that it was not". Along this line, he maintains: "Did the evidence of the extraneous offenses 'make more or less probable a fact of consequence?' No, it did not. Whatever [Vaughn] did, or did not, do to Mr. Shaw and the Pucketts had little or no bearing on what he allegedly did subsequently to [the victim]". Fatal to this contention, however, as discussed *supra* and recognized by the district court, is the evidence's relevancy to Vaughn's intent *vel non* to rob the victim prior to committing murder.

Ultimately, Vaughn contends that this evidence was damning and that, in a capital murder prosecution, counsel is ineffective for not making a Rule 403 objection to such evidence. This conclusory allegation does not satisfy the COA-merits-standard.

2.

For his second ineffective assistance claim, Vaughn contends trial counsel failed to interview a claimed alibi witness. According to Vaughn: his counsel did not discover this witness, Green, until after the conclusion of the guilt phase; had counsel "conducted an independent investigation into the facts", they would have known sooner of this witness; and *had Green testified at the guilt phase*, he would have testified that he was with Vaughn at the time of the murder. (As discussed *infra*, Green did testify during the punishment phase as a rebuttal witness for the State.)

19

Vaughn raised this issue in his state habeas application.  The trial court required Vaughn's counsel to submit an affidavit responding to, *inter alia*, this claim.  In their affidavit, they stated:

> VAUGHN never mentioned ... Green ... in our initial interviews as an alibi for ... VAUGHN. In April, 1992 shortly before trial, ... VAUGHN mentioned ... Green for the first time as a possible alibi witness.  This was inconsistent with ... VAUGHN'S earlier narrative to counsels as to his whereabouts at the time of ... [the] murder.  We attempted to contact ... Green through Jackie Vaughn [Vaughn's brother] and our investigator.  Our investigator spoke with ... Green prior to the conclusion of the guilt/innocence phase of the trial.  Based upon this interview we felt that ... Green's testimony could not provide a credible alibi and would hurt ... VAUGHN because it helped establish a robbery/theft/burglary motive for the murder. Also, we felt that there was a good chance that the jury would perceive ... Green's testimony as perjured testimony which would further anger the jury towards ... VAUGHN with a greater likelihood of a death sentence.  See attached statement of ... Green.

Attached to counsels' affidavit was Green's 7 May 1992 statement (the guilt phase of Vaughn's trial began three days earlier, on 4 May).  In that statement, Green recounts the following:

> On October 16, 1992 [should be 1991], sometime in the afternoon.  I saw Roger Vaughn in the flats in Electra [Texas] at a café.  We drank and talked for a couple of hours.  He said he ran out of money and had to go to Vernon [Texas] to get some money.  He went to Vernon [Texas] before dark.  He came back to my girlfriend's house ... about 9:00 p.m.  He acted nervous and asked my girlfriend to drive....  The next morning he left early.

20

>        After he left, I found out that the police
> were looking for him by watching T.V.  Until
> today, May 7, 1992, I never have talked to the
> police or law authorities about this.
>
>        About three or four weeks ago, Jackie
> Vaughn [Vaughn's brother] offered me five
> hundred dollars to testify that Roger and I
> were doing crack all the day that he killed
> the lady.  I said no.  I never told the police
> or law authorities about this until today.

After considering counsels' affidavit, the state trial court recommended denial because "[i]nvestigation was done after [Vaughn] belatedly requested it, and a strategy decision [was] made by counsel ther[e]after".  *Ex parte Vaughn*, at 4.  Furthermore, the court found that Vaughn's "court appointed trial counsel did not fail to properly investigate [Vaughn's] alleged alibi defense".  *Id*. at 6.

In considering this claim, the district court, under the deferential AEDPA standard of review, deferred to the state court's findings of fact because Vaughn had failed to demonstrate by clear and convincing evidence that they were incorrect.  *Vaughn-USDC*, at 35-36; *see* 28 U.S.C. § 2254(e)(1).  Accordingly, the court presumed "the facts contained in the attorneys' affidavit[] and found credible by the state habeas court to be correct".  *Vaughn-USDC*, at 36.

In holding *no* deficient-performance, the court first noted that Vaughn's counsel could not be faulted for not investigating Green earlier, because Vaughn had not timely provided this

21

information to them. *Id*. at 37. Concerning their not further investigating, after their investigator interviewed Green, the court stated that "counsel concluded that not only could Green not provide a credible alibi for Vaughn, but that Green's testimony would aid the State in establishing a motive for the murder". *Id*. at 38. The district court concluded: "Under these circumstances, Vaughn's attorneys' failure to use Green constituted a rational tactical decision warranting 'a heavy measure of deference'"; and the "soundness of their decision not to use Green is reinforced by Green's affidavit in which he accuses Vaughn's brother of attempting to bribe him for favorable testimony". *Id*.

As for prejudice, the district court first noted that, based upon Green's affidavit, any testimony would have been more harmful than helpful. *Id*. Second, after reviewing Green's testimony given as a rebuttal witness for the State during the punishment phase, the district court noted Green testified as follows: he and Vaughn were drinking together in Electra, Texas, for three to five hours beginning at approximately 2:30 p.m., *id.*; Vaughn left to travel to Vernon, Texas, to "get some money"; and, when Vaughn returned to Electra, he was not acting "normal ... like he was when he left", *id*. at 39.

According to the district court, Green's testimony,

> *which places Vaughn in Vernon, where the murder took place*, on the evening of the murder is not at all helpful to Vaughn and

22

> further weakens his argument that he was
> prejudiced by his counsels' failure to use
> Green as a witness.

*Id*. (emphasis added).

In his COA request, Vaughn maintains Green "testified [during the penalty phase] that he was with [Vaughn] at the time that the [victim] was murdered" and that had "counsel interviewed ... Green, they could have offered his exculpatory testimony". Green's testimony, however, was that he was with Vaughn for between three and five hours beginning at 2:30-3:00 p.m. the day of the murder; it does not preclude Vaughn's committing the murder between 6:30 and 7:00 p.m.

Other than this contention, Vaughn does not address the district court's holding concerning this claim. He fails to satisfy the COA-merits-standard.

### III.

For the foregoing reasons, a COA is

*DENIED.*