**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 01-10803

JAMES P. COLLIER,

Petitioner-Appellant,

versus

JANIE COCKRELL, Director, Texas Department
of Criminal Justice, Institutional Division,

Appellee-Respondent.

Appeal from United States District Court
for the Northern District of Texas

July 25, 2002

Before EMILIO M. GARZA, STEWART, and PARKER, Circuit Judges.

CARL E. STEWART, Circuit Judge.

Petitioner James Paul Collier ("Collier"), convicted of capital murder in Texas and sentenced

to death, requests from this Court a Certificate of Appealability ("COA") pursuant to 28 U.S.C.

§ 2253(c)(2). For the reasons set forth below, we DENY the COA.

<u>FACTUAL AND PROCEDURAL BACKGROUND</u>

A brief summation of the evidence presented at trial is all that is necessary for this review.

On the evening of March 14, 1995, Collier entered a house in Wichita Falls, Texas, where Collier's

daughter was spending her spring break vacation, and shot and killed Gwendolyn Joy Reed and her

adult son, Timmy Reed. Neither of the two victims were related to Collier or involved in a dispute with him, but Collier's daughter was visiting her former step-father, who lived in the house with Timmy Reed, at the time of the murders. After the murders, Collier drove to New Mexico. Collier was apprehended in New Mexico and he gave a videotaped confession, during which he admitted shooting the victims. In his confession, Collier stated that he initially went into the house with his rifle because he was angry with his ex-wife and daughter because they refused to have contact with him and because he believed that his daughter had been sexually abused by her former step-father.

In April of 1996, Collier was convicted by a jury of capital murder for the murders of Gwendolyn Joy Reed and Timmy Reed during the same criminal transaction and was sentenced to death.[1] On direct appeal, the Texas Court of Criminal Appeals affirmed the conviction and sentence. Collier v. State, 595 S.W.2d 621 (Tex. Crim. App. 1997). The United States Supreme Court denied Collier's petition for a writ of certiorari. Collier v. Texas, 525 U.S. 929 (1998).

Thereafter, Collier filed an application for state habeas relief, in which he alleged that he was entitled to relief based on twenty-four grounds. On December 4, 1997, the trial court entered findings of fact and conclusions of law, and recommended that relief be denied. The Texas Court of Criminal Appeals adopted the findings of fact and conclusions of law of the trial court, and denied relief on January 14, 1998. Ex Parte Collier, No. 36,143-01 (Tex. Crim. App. Jan. 14, 1998) (unpublished).

---

[1]Collier was sentenced to death by the jury's "yes" and "no" answers, respectively, to two special issues: (1) "Is there a probability that Collier would commit criminal acts of violence that would constitute a continuing threat to society?" (2) "Is there, taking into consideration all of the evidence, including the circumstances of the offense, Collier's character and background, and Collier's personal moral culpability, a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed?"

Collier filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in federal court on October 1, 1999. Collier raised five claims in this petition: (1) ineffective assistance of counsel based on his trial counsel's failure to present any mitigating evidence and to object to victim character evidence that was presented during the punishment phase of trial; (2) the trial court violated his rights under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution by prohibiting him from conducting voir dire on his parole eligibility if given a life sentence and by refusing to instruct the jury regarding parole eligibility; (3) the trial court denied Collier his right to self-representation under the Sixth Amendment to the United States Constitution by denying his request to suppress the original voir dire after he began representing himself in the middle of the voir dire process; (4) Texas Code of Criminal Procedure article 11.071 is unconstitutional because it requires that a state habeas application be filed before direct appeal is final; and (5) the Texas Court of Criminal Appeals denied Collier's due process rights under the Fourteenth Amendment to the United States Constitution by refusing his request to appoint a neuropsychologist to evaluate Collier during the state habeas process. The State moved for summary judgment on all of Collier's claims, and the district court granted that motion in its Memorandum Opinion and Order dated May 9, 2001. The district court entered final judgment denying Collier's § 2254 petition on May 22, 2001.

Pursuant to § 2253(c)(2), Collier filed a request for a COA from the district court. On July 9, 2001, the district court incorporated by reference its May 9th order in support of its finding that

3

Collier had failed to make a substantial showing of the denial of a constitutional right and denied this request. Collier now requests a COA from this Court.[2]

STANDARD OF REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA") because Collier filed his § 2254 habeas petition in the district court on October 1, 1999, after the April 24, 1996 effective date of the AEDPA. See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Tennard v. Cockrell, 284 F.3d 591, 594 (5th Cir. 2002). Under the AEDPA, before an appeal from the dismissal or denial of a § 2254 habeas petition can proceed, a petitioner must obtain a COA. 28 U.S.C. § 2253(c)(2). A COA will be granted "only if the [petitioner makes] a substantial showing of the denial of a constitutional right. Id. To make a "substantial showing," the petitioner "must

---

[2]Before addressing the merits of Collier's COA application, we note that on February 4, 2002, the day that the panel heard oral arguments in this case, Collier's counsel presented the court with a "Motion for Permission to Rescind and Withdraw Petitioners Application for a Certificate of Appealability Under 28 U.S.C. § 2253" with an affidavit attached that was signed by Collier on August 28, 2001. When questioned about why this motion was filed on February 4, 2002, when Collier's affidavit was signed on August 28, 2001, Collier's counsel stated that it took this long to ascertain from Collier's family that Collier truly intended to forego further appeals in this case. Collier's counsel also stated that in December of 2001, the last time that counsel had contact with Collier, it was Collier's intent to withdraw the COA application. The State's response at oral argument to this motion was not helpful because the State was not aware of the motion until that day. The State requested that we deny Collier's COA application and then remand the case back to the district court for a competency determination. Given the dated nature of Collier's affidavit, which Collier has neither subsequently withdrawn nor ratified, and the fact that Collier's counsel has not contacted Collier since December and pressed Collier's claims at oral argument, we are left without a definitive basis from the record to determine if the withdrawal of Collier's COA application is viable. This application has been fully briefed and submitted to this Court for decision, and oral argument by the parties has been completed. Where an action of such magnitude, involving the life of the petitioner, has been fully briefed and submitted to this Court for decision with assistance of counsel, we construe the record in favor of maintaining Collier's COA application and will proceed to render a decision on the merits. See Gregg v. Georgia, 428 U.S. 153, 187 (1976) ("There is no question that death as a punishment is unique in its severity and irrevocability."); Flores v. Johnson, 210 F.3d 456, 459 (5th Cir. 2000) ("Death is the most final, and most severe, of punishments.").

4

demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." Tennard, 284 F.3d at 594 (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Where, as here, t he district court rejects a prisoner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). "Any doubt regarding whether to grant a COA is resolved in favor of the petitioner, and the severity of the penalty may be considered in making this determination." Tennard, 284 F.3d at 594.

In determining whether a COA should be granted, we are mindful of the deferential scheme laid out in the AEDPA. Id. Federal courts defer to a state court's adjudication of a petitioner's claims on the merits unless the state-court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Under the "contrary to" clause, a federal court may grant habeas relief if the state court "reaches a legal conclusion in direct opposition to a prior decision of the United States Supreme Court or when it reaches a different conclusion than the United States Supreme Court on a set of materially indistinguishable facts." Riddle v. Cockrell, 288 F.3d 713, 716 (5th Cir. 2002). Under the "unreasonable application" clause, a federal court may grant the writ if the state court's application of clearly established federal law is "objectively unreasonable." Id. Further, state court findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

We review a district court's findings of fact for clear error and issues of law *de novo*. Soffar v. Johnson, 237 F.3d 411, 445 (5th Cir. 2000).

DISCUSSION

In his petition for COA, Collier makes three arguments. First, he claims that the state trial court violated his Fifth, Eighth, and Fourteenth Amendment rights by refusing to (1) inform the jury that he would have not been eligible for parole for forty years had he been given a life sentence and (2) let Collier voir dire the jury on this issue. Second, he claims that he was denied his right to self-representation when the state trial court denied his requests to (1) suppress the original voir dire examination of the jury panel conducted by appointed counsel after Collier elected to represent himself and (2) conduct voir dire of those venire members previously examined by counsel. Third, Collier claims that he was denied the effective assistance of counsel by his trial counsel's failure to present mitigating evidence and to object to victim character evidence that was presented at the punishment stage of trial. We will address each argument in turn.

I.

Collier argues that the state trial court violated his due process rights by failing to instruct the jury that, if it elected to impose a life sentence, he would be ineligible for parole for forty years. The trial judge denied Collier's request to give a jury instruction on this point during the punishment phase of his trial. Collier relies on Simmons v. South Carolina, in which a plurality of the Supreme Court observed that "where the defendant's future dangerousness is at issue, and state law prohibits the defendant's release on parole, due process requires that the sentencing jury be informed that the defendant is parole ineligible." 512 U.S. 154, 156 (1994). Collier argues that had the jury been informed that a life sentence would require him to remain in prison for at least forty years, which

6

Collier asserts is comparable to a life sentence without parole, especially considering that he would be ineligible for parole until he was eighty-eight years old, the jury may have determined that he would not pose a continuing threat to society and thus chosen to give him a life sentence instead of the death penalty.

Contrary to Collier's argument, however, Simmons provides no support for his due process challenge. The Supreme Court has repeatedly reiterated that Simmons held that when "a capital defendant's future dangerousness is at issue, and the *only* sentencing alternative to death available to the jury is life imprisonment without possibility of parole, due process entitles the defendant to inform the jury of [his] parole ineligibility, either by a jury instruction or in arguments by counsel." Kelly v. South Carolina, 122 S. Ct. 726, 728 (2002) (quoting Shafer v. South Carolina, 532 U.S. 36, 39 (2001)) (internal quotations omitted) (emphasis added); see also Ramdass v. Angelone, 530 U.S. 156, 166 (2000) (plurality opinion) ("The parole-ineligibility instruction is required *only when*, assuming the jury fixes the sentence at life, the defendant is ineligible for parole under state law." (emphasis added)). Further, our circuit has consistently emphasized that Simmons applies only when there is a life-without-possibility-of-parole alternative to capital punishment, an alternative is not available under Texas law. E.g., Tigner v. Cockrell, 264 F.3d 521, 525 (5th Cir. 2001); Wheat v. Johnson, 238 F.3d 357, 362 (5th Cir. 2001). At the time of Collier's conviction, a defendant convicted of capital murder who received a life sentence was ineligible for parole until he had served forty years in prison. See TEX. CRIM. PROC. CODE ANN. art. 42.18 § 8(b) (Vernon Supp. 1995), repealed by TEX. GOV'T CODE ANN. § 508.145(b) (Vernon 1998). Thus, because Collier did not face a life sentence without any possibility of parole, he was not entitled to a Simmons jury instruction regarding his forty-year parole ineligibility.

7

To the extent that Collier urges that he was entitled to a <u>Simmons</u> instruction because this lengthy parole ineligibility has the practical effect of a life sentence without the possibility of parole, such an extension of <u>Simmons</u> would constitute a new rule of constitutional criminal law, and is thus barred by the non-retroactivity principle announced in <u>Teague v. Lane</u>, 489 U.S. 288 (1989). <u>See</u> <u>Tigner</u>, 264 F.3d at 525; <u>Wheat</u>, 238 F.3d at 361-62; <u>Clark v. Johnson</u>, 227 F.3d 273, 282 (5th Cir. 2000). Accordingly, Collier has failed to make a substantial showing of the denial of a constitutional right on this due process claim.

In addition to asserting a due process claim, Collier argues that the state trial court's failure to give the jury instruction violated the Eighth Amendment prohibition against cruel and unusual punishment. Collier correctly points out that the Supreme Court in <u>Simmons</u> expressly declined to address whether its holding was also compelled by the Eighth Amendment. <u>See</u> 512 U.S. at 162 n.4. This Court, however, has consistently held that neither the Due Process Clause nor the Eighth Amendment requires a state court to give jury instructions on parole ineligibility in Texas capital sentencing proceedings. <u>E.g.</u>, <u>Tigner</u>, 264 F.3d at 525; <u>Johnson v. Scott</u>, 68 F.3d 106, 112 (5th Cir. 1995). Because Collier bases his argument on <u>Simmons</u> and future dangerousness, in light of this Court's precedent, Collier has not made a substantial showing of the denial of a constitutional right with respect to this Eighth Amendment claim.

In a related claim, Collier argues that his due process and Eighth Amendment rights were violated because the district court denied his motion to examine potential jurors regarding the forty-year parole ineligibility for life sentences for capital murder.[3] As explained above, Collier's reliance

_____

[3]Defense counsel stated that he would have asked each juror the following: "I would ask each juror if they were aware of what the parole law was in a capital murder case with a life sentence. If they didn't know, I would inform them it was a 40-year sentence. I would ask them, each juror, how

8

on Simmons is unavailing. This Court has specifically held that a capital murder defendant does not have a constitutional right to question venire members regarding Texas parole law. Wheat, 238 F.3d at 362; King v. Lynaugh, 850 F.2d 1055, 1060-61 (5th Cir. 1988) (en banc). In Wheat, which was decided after Simmons, we rejected claims under the Fifth, Sixth, Eighth, and Fourteenth Amendments. 238 F.3d at 362. Collier therefore has not made a substantial showing of the denial of a constitutional right.

Collier continues his arguments above by asserting that he was entitled to a jury instruction on parole eligibility or to conduct voir dire on the applicability of parole because the issue of parole was raised by the State during voir dire and during the prosecutor's closing and rebuttal arguments at the punishment stage of trial as well as by a jury instruction given by the trial court, and because several jurors considered parole when reaching their decisions on punishment. Collier first suggests that by raising the issue of parole, the State opened the door to introducing evidence regarding parole eligibility. Specifically, Collier complains that the prosecutor asked several prospective jurors whether they would be able to disregard any outside knowledge about parole and not consider parole when answering the special issues at the punishment stage and, during the State's arguments at punishment, the prosecutor stated that Collier would be a continuing threat to society whether he was inside or outside of prison. In making this claim based upon the prosecutor's conduct, Collier continues to rely on Simmons. In Simmons, Ramdass, Shafer, and Kelley, the Supreme Court did not suggest that the prosecution can "open the door" and somehow create a constitutional right that the potential jurors and the sentencing jury be informed about the defendant's parole eligibility. Collier provides no

---

they felt that 40-year minimum affected the question of future dangerousness. And, also, given the fact that it was a 40-year minimum on a life sentence, how it would affect their opinion of a life sentence versus a death sentence."

9

further case law to support this argument. Thus, Collier has failed to show that the district court's assessment of this claim is debatable among reasonable jurists. We find that Collier has not made a substantial showing of the denial of a constitutional right.

Collier next complains that, in the trial court's charge on punishment, the court instructed the jury as follows regarding the issue of parole: "During your deliberations you are not to consider or discuss any possible actions of the Board of Pardons and Parole or the Governor nor how long this defendant will be required to serve on a sentence of life imprisonment." Collier asserts that this instruction implied that a life sentence is not really a sentence for life. We agree with the district court, however, that, in actuality, the jury charge merely instructed the jury not to consider parole in reaching its decision. Because the Constitution does not require a jury instruction on parole eligibility in a Texas capital murder case, it follows that it is not unconstitutional to instruct the jury not to consider parole. See Muniz v. Johnson, 132 F.3d 214, 224 (5th Cir. 1998) (rejecting a challenge to the constitutionality of instructing a Texas jury not to consider a capital defendant's parole eligibility if he received a sentence of life).

As further support of his claim for relief, Collier submitted an affidavit from an investigator which states that three jurors from Collier's trial told the investigator that they considered parole in deciding to impose the death penalty.[4] The state habeas court found that Collier neither offered affidavits from the three jurors in question nor alleged that such affidavits were unobtainable and that Collier did not allege that any discussion of parole had occurred during deliberations. The state court

---

[4]The investigator's affidavit states: "Three of the jurors I interviewed told me that the possibility of Mr. Collier being released on parole in the future was a factor in their decision to vote for the death penalty. One of these jurors told me that he had voted for the death penalty so that Mr. Collier would have no chance of getting out of prison."

10

also concluded that "[a]bsent a showing of inability to obtain affidavits from the jurors in question, the statement of the investigator . . . is hearsay, and will not be considered." The district court found that the investigator's affidavit is hearsay and "does not establish any federal constitutional error." The district court denied this claim because, at most, the evidence shows that some jurors thought about parole and there was no evidence that there were deliberations on parole or that incorrect information about parole was given to the jury. See Monroe v. Collins, 951 F.2d 49, 52-53 (holding that a juror's accurate comments about parole during deliberations did not violate the defendant's constitutional rights). We accord the state habeas court's factual findings a presumption of correctness pursuant to § 2254(e)(1), and Collier has failed to rebut this presumption by clear and convincing evidence. As the state courts and the district court concluded, Collier does not present evidence to support his allegation of jury misconduct. Thus, Collier fails to show a federal constitutional violation on this ground.[5]

Finally, Collier contends that because Texas's sentencing scheme treated capital defendants differently from non-capital defendants, it violated the Fourteenth Amendment's guarantee of equal

_____

[5]In his application for COA before this Court, Collier also contends that his right to due course of law under Article 1, Section 19 of the Texas Constitution was violated when three jurors disregarded the trial court's jury instructions and considered the Texas parole laws during their deliberations. See TEX. CONST. art. 1, § 19 ("No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land."). In support of this argument, Collier points to Smith v. State, where the Texas Court of Criminal Appeals held that "were a jury to consider parole in its deliberations a defendant may be entitled to a new trial." 898 S.W.2d 838, 852 (Tex. Crim. App. 1995). Collier's claim is without merit because it is based solely on state law and therefore does not state a claim for federal habeas relief. E.g., Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law." (citations and internal quotations omitted)); Narvaiz v. Johnson, 134 F.3d 688, 695 (5th Cir. 1998) (holding that "claims that the trial court improperly applied state law do not constitute an independent basis for federal habeas relief"; rather, a habeas applicant must claim violation of federal constitutional right).

11

protection. At the time of Collier's conviction, Texas law barred judges from instructing juries on parole eligibility in capital cases, but allowed such instructions in non-capital felony cases.[6] Applying rational basis review, this Court has previously rejected equal protection challenges to Texas's sentencing scheme, holding that Texas could rationally conclude that juries should not be instructed on parole ineligibility in capital cases only. Tigner, 264 F.3d at 526; Green v. Johnson, 160 F.3d 1029, (5th Cir. 1998). As a result, Collier's equal protection claim fails to show the denial of a constitutional right. Thus, no COA will issue on Collier's various claims regarding parole eligibility.

II.

Collier complains in two related grounds that his Sixth Amendment right of self-representation was abridged. Collier relies on Faretta v. California, in which the Supreme Court held that a criminal defendant has a constitutional right under the Sixth Amendment to proceed without counsel and represent himself at trial when he elects to do so. 422 U.S. 806, 819 (1975).

John Curry ("Curry") was initially appointed to represent Collier. On February 23, 1996, five days into the voir dire process, Collier filed a request to substitute counsel, which was denied. On February 26, 1996, Collier filed a request to proceed *pro se* and for the appointment of standby counsel. At the time Collier made this request, nineteen venire members had been questioned, seven of which were excused. On February 29, 1996, after a hearing regarding Collier's competency to waive counsel and the voluntariness of the waiver, the trial court granted Collier's motion to represent himself, with Curry acting as standby counsel. That same day, Collier filed a request to suppress the original voir dire and to order additional voir dire. Collier stated that he believed Curry

---

[6]Texas now allows a capital defendant to receive a jury instruction regarding his parole eligibility. See TEX. CRIM. PROC. CODE Ann. art. 37.071(e)(2)(b) (Vernon 2002).

had not spent enough time discussing the lesser offenses of murder and manslaughter and did not agree with the excusal of certain jurors. This motion was denied by the trial court on March 1, 1996. On March 27, 1996, however, the trial court stated that, at the suggestion of the State and with the agreement of the defense, the parties would be allowed to speak individually with the first eleven members of the panel who were placed on the panel before Collier began representing himself. The parties re-questioned ten of these eleven jurors individually and agreed to excuse Juror Kennedy, who was the first juror on the panel. Two of the ten re-questioned panel members served on Collier's jury.

Collier first claims that his right of self-representation was violated when the state trial court failed to suppress the original voir dire examination of the jury panel after Collier asserted his right to self-representation and begin the voir dire process again. When Collier raised this Faretta claim on state habeas review, the state court found that his Sixth Amendment right to self-representation was not violated by the trial court's failure to suppress the original voir dire and empanel a new jury panel because "empaneling a new venire in a death penalty case would have amounted to more than an 'inconvenience' or 'disruption' in the trial proceedings; it would have *ended* the proceedings, and been the functional equivalent of a mistrial." The district court held that the state court's resolution of this claim was not an unreasonable application of federal law. The district court observed that the right of self-representation does not attach until it is asserted. See Brown v. Wainwright, 665 F.2d 607, 610 (5th Cir. 1982) (en banc) (holding that unlike the Sixth Amendment right to counsel, which is in effect until waived, the right of self-representation is not effective until asserted). The district court pointed out that the trial court honored Collier's request to proceed *pro se* as soon as it was

13

made, and concluded that because Collier "did not assert his right until several days of voir dire had already occurred, federal law did not require the trial court to start the trial process all over again."

Collier's second claim is that the trial court's refusal to allow Collier to conduct voir dire of those venire members previously examined by counsel violated his right of self-representation. Regarding Collier's assertion that he should have been allowed to re-question several venire members, the state habeas court found that Collier had procedurally defaulted this claim because his request to suppress the original voir dire did not contain a request to have the nineteen prospective jurors recalled for additional questioning and Collier pointed to no question that he wished to ask these jurors. Further, the state court concluded that Collier's right to self-representation was not violated by the trial court's denial of additional questioning. The district court held that the state court's resolution of this claim was not an unreasonable application of federal law. The district court noted that the trial court allowed Collier to re-question every panel member that had not been excused and merely denied Collier the opportunity to question eight potential jurors who were excused before he began representing himself. Thus, the district court concluded that Collier failed to show that his right to self-representation was denied.

Collier does not point to any cases that specifically address his claims. He merely contends that his entitlement to a new jury panel and to have prospective jurors recalled for additional questioning when he began proceeding *pro se* during voir dire is implicit in his right to represent himself under Faretta. Collier argues that as long as his request is not made for the purpose of obstructing the proceedings, his right of self-representation trumps the inconvenience of beginning the voir dire process anew or recalling prospective jurors. These claims are meritless. Collier has not shown that the reasonable jurists would find the district court's assessment of his Faretta claims

14

debatable or wrong. We find that Collier has not made a substantial showing that his right of self-representation was denied, and thus deny his request for a COA.

III.

Finally, Collier submits that he was denied effective assistance of counsel because Curry, when asked to resume as counsel during the punishment stage of trial, failed to present mitigating evidence and object to victim character evidence that was presented by the State during punishment. During oral argument, Collier's counsel sought to make much of the contention that Curry's decision to not offer mitigating evidence constituted ineffective assistance of counsel. However, Collier's request for COA and brief contained only two paragraphs regarding ineffective assistance of counsel taken directly from the opinion of the district court denying Collier's federal habeas petition. "This Court has made clear that conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding." Miller v. Johnson, 200 F.3d 274, 282 (5th Cir. 2000) (citing Ross v. Estelle, 694 F.2d 1008, 1012 (5th Cir. 1983)). Considering the caution that we exercise in a capital case, because the district court addressed the merits of these claims, we will do so as well.

To prevail on ineffective assistance of counsel claims, Collier must show that Curry's performance was deficient and that the deficient performance resulted in actual prejudice. Strickland v. Washington, 466 U.S. 688, 687 (1984). Aft er reviewing Collier's petition for a writ of habeas corpus, his request for a COA in the district court, and the applicable case law, we conclude that Collier has shown neither deficient performance nor prejudice. Because Collier cannot prevail on his Strickland claim, we refuse to grant a COA on this issue.

CONCLUSION

15

Collier has not made a substantial showing of the denial of a constitutional right. We therefore DENY his request for a COA. The Motion for Permission to Rescind and Withdraw Petitioners Application for a Certificate of Appealability Under 28 U.S.C. § 2253 is DENIED.

DENIED.