United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 24, 2004**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 03-11186
_____


GEORGE ALARICK JONES,

Petitioner-Appellant,


versus


DOUG DRETKE, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellee.


_____

Appeal from the United States District Court
For the Northern District of Texas
(No. 3:00-CV-2352-G)

_____


Before JONES, BENAVIDES, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

I. Facts and Proceedings

Petitioner George Alarick Jones was convicted of capital murder in Texas and sentenced to death. The Texas Court of Criminal Appeals affirmed the conviction and sentence, *Jones v. State*, 982 S.W.2d 386 (Tex. Crim. App. 1998), and the United States Supreme Court denied certiorari. *Jones v. Texas*, 528 U.S. 985 (1999). After Jones's petition for state post-conviction relief was denied, *Ex parte Jones*, No. 45,979-01 (Tex. Crim. App. Sept. 13, 2000) (per curiam)

1

(unpublished), he applied for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Northern District of Texas. *Jones v. Cockrell*, No. 3-00-CV-2352-G (N.D. Tex. July 23, 2003). The district court denied the petition, but later granted Jones a Certificate of Appealability ("COA") on two issues: 1) whether the trial court's removal of a venire member for cause violated Jones's rights under the Sixth or Fourteenth Amendments; and 2) whether the trial court's refusal to instruct or voir dire the jury about parole eligibility impinged upon Jones's Eighth or Fourteenth Amendment rights. Jones now presents these two issues on appeal.

## II. Standard of Review

Our standard of review in federal habeas proceedings is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that *was contrary to, or involved an unreasonable application of, clearly established Federal law*, as determined by the Supreme Court of the United States; . . . .

28 U.S.C. § 2254(d) (emphasis added). The Supreme Court, interpreting § 2254(d)(1), held that "a state-court decision is . . . contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). In order to find that a state adjudication is objectively unreasonable, "the state court's application [of federal law] must

2

be more than merely incorrect." *Robertson v. Cockrell,* 325 F.3d 243, 248 (5th Cir. 2003) (en banc).

## III. Analysis

A.    Removal of venire member for cause

Jones contends that the trial court violated his Sixth and Fourteenth Amendment rights by erroneously granting the State's motion to strike a venire member for cause. During voir dire, the prosecution asked venire member Margaret Snyder about her views on accomplice testimony. Snyder stated that she "would probably be a little more skeptical" of an accomplice witness, but maintained that her evaluation of the testimony "would come down to whether or not [she] believed the individual [accomplice] or not." Snyder made similar statements when questioned by defense counsel and the trial court. The State, citing Article 35.16(b)(3) of the Texas Code of Criminal Procedure,[1] then moved the trial court to strike Snyder from the venire panel. Over Jones's objection, the court granted the State's motion and removed Snyder. Jones now claims that his subsequent conviction should be reversed on the grounds that the removal of Snyder violated his Sixth Amendment right to an impartial trial, and contravened the "fundamental fairness" guarantee of the Fourteenth Amendment's Due Process Clause.

(1)    Procedural bars

The Director of the Texas Department of Criminal Justice ("Director") asserts that Jones's claims challenging the removal of Snyder are procedurally barred pursuant to 28 U.S.C. § 2254(b)(1)(A). Section 2254(b)(1)(A) precludes federal habeas relief unless "the applicant has

---

[1] Article 35.16(b)(3) provides that the State may challenge for cause those venire members who "ha[ve] a bias or prejudice against any phase of the law upon which the State is entitled to rely for conviction or punishment."

exhausted the remedies available in the courts of the State." Whether a federal habeas petitioner has exhausted state-court remedies is a question of law. *See Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001). The exhaustion requirement is satisfied when the substance of the habeas claim has been fairly presented to the highest state court. *See id.* (citing *Picard v.Connor*, 404 U.S. 270, 275-76 (1971)). The presentation requirement, however, is excused "when a state court with the authority to make final adjudications undertook to decide the claim on its merits *sua sponte*." RANDY HERTZ & JAMES S. LIEBMAN, FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE § 23.3a (4th ed. 1998) (citing *Walton v. Caspari*, 916 F.2d 1352, 1356-57 (8th Cir. 1990); *Sandstrom v. Butterworth*, 738 F.2d 1200, 1206 (11th Cir. 1984)). Such an exception makes sense in light of § 2254(b)(1)(A)'s long-recognized policy "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard,* 404 U.S. at 275*; Wilder*, 274 F.3d at 260.

Jones did not, in either his direct appeal or his petition for state post-conviction relief, claim that the removal of Snyder violated his rights under the Sixth or Fourteenth Amendments. Rather, Jones argued that Snyder's dismissal was not justified by Article 35.16(b)(3) of the Texas Code of Criminal Procedure. Importantly, such violations warrant reversal only if they are reversible constitutional error. TEX. R. APP. PROC. 44.2(a).

The Texas Court of Criminal Appeals, on direct review, held that the trial court did indeed misapply Article 35.16(b)(3).[2] *Jones*, 982 S.W.2d at 390-91. But the majority court found that the violation did not demand a reversal of Jones's conviction, reasoning *sua sponte* that the

---

[2] The court found that Snyder was a suitable juror, explaining that "once the legal definition of 'reasonable doubt' was explained to her, Snyder was unwavering in stating that she would follow the law and hold the State only to that standard at both stages of the trial." *Jones*, 982 S.W.2d at 390.

4

removal of Snyder did not impinge upon Jones's Sixth Amendment right to an impartial trial. *Id.* at 391. Although Jones did not adequately present his Sixth Amendment claim, we find that state remedies related to this claim were nonetheless exhausted because the Texas Court of Criminal Appeals "undertook to decide it on the merits." The majority opinion, however, did not at any point reference whether the dismissal of Snyder contravened the "fundamental fairness" guarantee of the Due Process Clause. As a result, Jones's Fourteenth Amendment claim relating to the removal of Snyder is procedurally barred by § 2254(b)(1)(A).[3]

(2)    Merits of the Sixth Amendment claim

The Director fully acknowledges that the trial court's removal of Snyder was not permitted by Article 35.16 of the Texas Code of Criminal Procedure. The narrow issue before this Court, however, is whether the state court's adjudication—that this violation did not constitute reversible error under the Sixth Amendment—was an objectively unreasonable application of clearly established federal law. We hold that it was not.

As a general rule, a trial court's erroneous venire rulings do not constitute reversible constitutional error "so long as the jury that sits is impartial." *United States v. Martinez-Salazar*, 528 U.S. 304, 313 (2000) (quoting *Ross v. Oklahoma*, 487 U.S. 81, 88 (1988))*; see also United*

---

[3] A dissenting opinion in Jones's direct appeal contends that the removal of Snyder violated principles of "fundamental fairness" as guaranteed by the Fourteenth Amendment. *Jones*, 982 S.W.2d at 396 n.4 (Baird, J., dissenting). A dissenting judge's reference to a claim, which is ignored by the litigants and the court's majority, does not by itself satisfy the requirements of exhaustion. As stated above, courts have created an exception to the presentation requirement when the unpresented issue is resolved *sua sponte* by the court. Under those circumstances, it is beyond doubt that the court had an "initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard,* 404 U.S. at 275*; Wilder*, 274 F.3d at 260. When a claim is merely addressed by a dissenting judge, as in the case *sub judice*, we have no such assurance that the court enjoyed this "initial opportunity."

*States v. Prati*, 861 F.2d 82, 87 (5th Cir. 1988) ("Only in very limited circumstances . . . will such an unintentional mistake warrant reversal of a conviction."). The Supreme Court, in *Gray v. Mississippi*, 481 U.S. 648 (1987), enunciated a limited exception to this general rule. The *Gray* Court found reversible error where a trial court had excused a potential juror for cause in a capital case based on her opposition to the death penalty even though her views would not have prevented or substantially impaired her ability to perform as a juror. *Id.* at 665, 668 (citing *Wainwright v. Witt*, 469 U.S. 412, 416 (1985); *Witherspoon v. Illinois*, 391 U.S. 510, 521 (1968)). *Gray* applies a broad standard of harm, stating that the "relevant inquiry is whether the composition of the *jury panel as a whole* could possibly have been affected by the trial court's error." 481 U.S. at 665 (internal quotations omitted).

Jones contends that the trial court's removal of Snyder constitutes reversible error under the standard set forth in *Gray*. The Supreme Court, however, one year after the *Gray* decision, stated:

> We decline to extend the rule of *Gray* beyond its context: the erroneous "*Witherspoon* exclusion" of a qualified juror in a capital case. We think the broad language used by the *Gray* Court is too sweeping to be applied literally, and is best understood in the context of the facts there involved.

*Ross*, 487 U.S. at 87-88 (internal citation omitted). In light of *Ross*, this Circuit recognizes the narrow applicability of *Gray*. *United States v. Prati*, 861 F.2d 82 (5th Cir. 1988) (Wisdom, J.). In *Prati*, this Court found that the legal effect of an erroneous grant of a prosecution's challenge for cause is to "provide the government with an extra peremptory challenge." *Id.* at 87. The Court then recognized that, except for *Witherspoon* violations, which were at issue in *Gray*, "*Ross v. Oklahoma* . . . sets forth the standard by which we determine the impact of an increase or decrease in the number of a party's peremptory challenges as a result of a court's erroneous ruling

on a challenge for cause." *Id*.; *see also id.* n.16 (explaining that the *Ross* standard does not govern *Witherspoon* challenges). Because Jones's claim is not founded in *Witherspoon*, we employ the analysis set forth in *Ross*: whether the jurors that actually sat were impartial as required by the Sixth Amendment.

Jones, in an effort to circumvent the stringent harm analysis outlined in *Ross*, asserts that his conviction must be reversed in accord with *Gomez v. United States*, 490 U.S. 858 (1989). In *Gomez*, the Supreme Court overturned a conviction on Sixth Amendment grounds where a magistrate exceeded his statutory jurisdiction and presided over the voir dire of a criminal trial without the defendant's consent. *Id*. at 876. Jones points out that both he and Gomez were "convicted as result of the composition of a jury based on a procedure other than that to which each was entitled by law." While arguably true, the holding in *Gomez* cannot be read so broadly as to mandate a reversal every time a trial error occurs during voir dire. We note that the Supreme Court reversed Gomez's conviction, *inter alia*, on the expressed ground that a defendant has the basic right to have "all critical stages of a criminal trial conducted by a person with jurisdiction to preside." *Id.* Because Jones does not contest the jurisdiction of the trial judge to preside over voir dire, we find *Gomez* to be inapposite to the case *sub judice*.

Following *Ross*, and this Court's holding in *Prati*, our review of Jones's Sixth Amendment claim is limited to whether the jurors that actually sat were impartial. Jones challenges the erroneous *exclusion* of an impartial juror rather than the erroneous *inclusion* of a partial juror, and nowhere does he suggest that the actual jury that determined his guilt and penalty was impartial. We thus hold that the state court's adjudication that Jones's conviction should not be reversed pursuant to the Sixth Amendment was not an objectively unreasonable application of clearly established federal law.

7

B.     Refusal to voir dire or instruct jury about parole eligibility

Jones next asserts that the trial court violated his rights under the Eighth and Fourteenth Amendments by refusing to voir dire or instruct the jury about his eligibility for parole in the event of a life sentence.  We find that neither claim has merit.

This Court has repeatedly found that "a capital murder defendant does not have a constitutional right to question venire members regarding Texas parole law." *Collier v. Cockrell*, 300 F.3d 577, 584 (5th Cir. 2003) (citing *Wheat v. Johnson*, 238 F.3d 357, 362 (5th Cir. 2001)). It is thus clear that the trial court's refusal to voir dire the jury about Jones's parole eligibility did not violate his rights under the Eighth or Fourteenth Amendments.

Jones's claim regarding the court's refusal to instruct the jury about parole law must also fail.  In *Simmons v. South Carolina*, the Supreme Court held that, in states where a defendant is *ineligible* for parole if given a life sentence, the Due Process Clause requires an instruction about parole law at the punishment phase of the trial.  512 U.S. 154, 156 (1994) (plurality opinion); *see also Ramdass v. Angelone*, 530 U.S. 156, 166 ("The parole-ineligibility instruction is required only when, assuming the jury fixes the sentence at life, the defendant is ineligible for parole under state law.").  In line with *Simmons*, this Court has held that a parole instruction is constitutionally warranted only when: (1) the state argues that the defendant represents a future danger to society; and (2) the defendant is legally ineligible for parole.  *See*, *e.g.*, *Woods v. Cockrell*, 307 F.3d 353, 361-62 (5th Cir. 2002); *Wheat*, 238 F.3d at 361.

The capital offense serving as the basis of Jones's conviction occurred on April 13, 1993. Under Texas law governing capital offenses committed between September 1, 1989, and August 31, 1993, a defendant who receives a life sentence becomes eligible for parole when actual time

8

served equals thirty-five years of confinement. *See* TEX. CODE CRIM. PROC. ANN. art. 42.18, § 8(b)(2) (Vernon 1993), *repealed by* TEX. GOV'T CODE ANN. § 508.145(b) (Vernon 1998). Because Jones would have been parole-eligible if the jury had sentenced him to life in prison, he enjoyed no constitutional right to instruct the jury on Texas parole law. We conclude that the state court's decision not to reverse Jones's conviction on the ground that the trial court refused to voir dire or instruct the jury on parole eligibility did not constitute an unreasonable application of federal law.

## IV. Conclusion

For these reasons, the state court's analysis of Jones's claims was not objectively unreasonable in light of clearly established federal law. We therefore deny Jones's application for a writ of habeas corpus.