United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 30, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 03-11244

ROBERT MADRID SALAZAR

Petitioner - Appellant

v.

DOUG DRETKE, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION

Respondent - Appellee

Appeal from the United States District Court
for the Northern District of Texas
No. 5:02-CV-224-C

Before KING, Chief Judge, and DeMOSS and STEWART, Circuit Judges.

PER CURIAM:[*]

Petitioner-Appellant Robert Madrid Salazar seeks a

certificate of appealability (COA) to appeal the district court's

dismissal of his 28 U.S.C. § 2254 habeas corpus application.  For

the following reasons, we DENY Salazar's request for a COA with

respect to his claim that the state trial court failed to

instruct the jury on parole eligibility, but we GRANT Salazar's

request for a COA on his claim that the jury impermissibly

---

[*]  Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

considered inaccurate, extrinsic evidence regarding parole.

## I. Background

On March 9, 1999, Robert Salazar was convicted by a Texas jury of capital murder. During the sentencing phase of his trial, Salazar asked the trial court to instruct the jury that he would be eligible for parole after forty years if he received life in prison rather than death.[1] The trial court declined to give the instruction but did instruct the jury that it should not consider the possibility of parole during deliberation.

The jury found that Salazar presented a future threat to society and that there was insufficient mitigating evidence to warrant life in prison rather than death. Consequently, the trial court sentenced Salazar to death. It was subsequently revealed through an interview by television reporters that, contrary to the trial court's instruction, the jury had discussed the possibility that Salazar could be released on parole if he were sentenced to life in prison.

In light of this discovery, Salazar moved for a new trial, arguing that the jury's parole discussion violated state law and

---

[1] Texas state law provides that a criminal convict who is sentenced to life in prison will not be eligible for parole until he has served forty years. TEX. GOV'T CODE ANN. § 508.145 (Vernon 2003) ("An inmate serving a life sentence for a capital felony is not eligible for release on parole until the actual calendar time the inmate has served, without consideration of good conduct time, equals 40 calendar years.").

his federal and state constitutional rights.  The trial court
conducted a hearing to consider Salazar's motion.  At the
hearing, Salazar presented testimony from four jurors: Voyles,
Ashley, Kelly, and Hamlin.[2]  Voyles explained that during
deliberations, the jurors learned that Kelly was a police
officer.  According to Voyles and Ashley, Kelly professed to know
the applicable parole law and incorrectly asserted as fact that
Salazar would be eligible for parole in twenty years.  Both
Voyles and Ashley testified that they relied on Kelly's statement
in considering Salazar's punishment.  Ashley asserted that
Kelly's comments contributed to her decision to change her vote
from life to death.  Kelly admitted that he had given his opinion
on the parole laws to the other jurors, but he maintained that he
had not held himself out as an expert on parole law.  Finally,
Hamlin testified that he vaguely remembered someone mentioning
that Salazar could be eligible for parole in twenty to twenty-
five years.

In rebuttal, the State presented affidavits from four jurors
(Holdridge, Sanford, Tinney, and Perez), stating that although

---

[2]  The Texas Rules of Evidence normally would bar this
testimony.  See TEX. R. EVID. 606(b)(prohibiting jurors from
testifying about their deliberations except for the purposes of
showing that an outside influence was brought to bear upon a
juror or to rebut a claim that the juror was not qualified to
serve).  However, Salazar and the State both withdrew their
initial evidentiary objections to the jurors' testimony and
affidavits.

Kelly may have offered his opinion on parole law, Kelly never held himself out as an expert or professed to have specific knowledge about parole law. Based on this evidence, the state trial court ruled from the bench and denied Salazar's motion for a new trial.

Salazar appealed to the Texas Court of Criminal Appeals (TCCA), arguing, inter alia, that the trial court's failure to instruct the jury regarding his parole eligibility violated his federal constitutional rights and that the jury's discussion of parole violated state law and his federal and state constitutional rights. Salazar v. State, 38 S.W.3d 141, 146-47 (Tex. Crim. App. 2001), cert. denied, 534 U.S. 855 (2001). The TCCA affirmed. First, the court rejected Salazar's contention that the failure to give an instruction regarding parole eligibility violated his federal constitutional rights. Second, the court dismissed Salazar's federal and state constitutional claims based on jury misconduct because Salazar's "brief present[ed] no authority in support of his argument . . . ." Salazar, 38 S.W.3d at 147.[3] In addressing Salazar's non-

---

[3] The State did not invoke the procedural bar doctrine in the state habeas proceeding, and the state habeas court therefore reached the merits of Salazar's claim. The State subsequently attempted to argue procedural bar in the federal district court, but the district court concluded that the State had waived the argument and that it was appropriate to reach the merits of Salazar's constitutional claim. The State has abandoned its procedural bar argument on appeal to this court.

constitutional state-law claim for jury misconduct, the court determined that the evidence presented to the trial court supported the conclusion that Salazar had failed to satisfy the elements of a state-law claim for jury misconduct under Sneed v. State, 670 S.W. 2d 262, 266 (Tex. Crim. App. 1984).[4] The court reached this conclusion because there was conflicting evidence regarding whether Kelly held himself out as an expert, whether he asserted his opinion as fact, and whether Ashley changed her vote as a result of Kelly's misstatement.

On October 13, 2000, while his direct criminal appeal was pending, Salazar filed a petition for a writ of habeas corpus in state court. The trial court (the same judge that had presided over Salazar's trial and sentencing) adopted the State's proposed findings of fact and conclusions of law and recommended that relief be denied. The TCCA, in turn, adopted the trial court's findings and conclusions and denied Salazar's habeas petition.

On September 6, 2002, Salazar filed a petition for habeas relief in federal district court. Salazar argued, inter alia, that his due process rights were violated by the trial court's refusal to instruct the jury regarding the applicable parole laws

---

[4] Under Sneed, "[a] jury's discussion of parole constitutes reversible error when a defendant shows (1) a misstatement of law; (2) asserted as a fact (3) by one professing to know the law (4) which is relied upon by other jurors (5) who for that reason changed their vote to a harsher punishment." Salazar, 38 S.W.3d at 147 (footnote omitted) (citing Sneed, 670 S.W.2d at 266).

and by the jury's discussion of parole during its deliberations. After concluding that the state court's adjudication of these claims was not contrary to or an unreasonable application of Supreme Court law, the district court denied Salazar's petition on August 27, 2003. Salazar filed a motion under Rule 59 on September 11, 2003, requesting that the district court reconsider its judgment. On October 27, 2003, the district court denied Salazar's motion.

Salazar filed a notice of appeal and a motion for a COA. Shortly thereafter, the district court denied Salazar's motion for a COA. Salazar now seeks a COA from this court.

## II. Discussion

### A. Timeliness of Appeal

We must first address the State's argument that Salazar did not timely file his notice of appeal. When a party has filed a Rule 59 motion to reconsider, the party need not appeal the adverse judgment until thirty days from the entry of the order denying the Rule 59 motion. FED. R. APP. P. 4(a)(4)(A)(iv). The State argues, however, that Salazar's Rule 59 motion itself was not timely and, therefore, that the time limit for filing the motion to reconsider was not extended by Rule 4(a)(4)(A)(iv).

A Rule 59 motion to reconsider must be filed within ten days after entry of the judgment. FED. R. CIV. P. 59(e). The district court entered judgment against Salazar on August 27, 2003.

Salazar filed his Rule 59 motion on September 11, 2003--fifteen calendar days after the district court's judgment.  However, Rule 6(a) provides that "the day of the act, event, or default from which the designated period of time begins to run shall not be included" in the computation, and that when "the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation."  FED. R. CIV. P. 6(a).  Between August 27 and September 11, there were two Saturdays, two Sundays, and one legal holiday (Labor Day on September 1).  Once we exclude these days under Rule 6(a), Salazar's Rule 59 motion was filed on the tenth day after the entry of judgment and therefore was timely.

Because Salazar filed a timely Rule 59 motion, he had thirty days after the district court denied his motion within which to file a notice of appeal.  The district court denied Salazar's motion on October 27, 2003.  Salazar filed a notice of appeal twenty-eight days later, on November 24, 2003.  Thus, his notice of appeal was timely, and the State's argument is without merit.

B.  **Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act (AEDPA),[5] a state habeas petitioner may appeal a district court's

---

[5]  AEDPA applies because Salazar filed his § 2254 habeas petition on September 6, 2002, well after AEDPA's effective date of April 24, 1996.  See Fisher v. Johnson, 174 F.3d 710, 711 (5th Cir. 1999).

dismissal of his petition only if the district court or the court of appeals first issues a COA. 28 U.S.C. § 2253(c)(1) (2004); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (explaining that a COA is a "jurisdictional prerequisite" without which "federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners"). "[W]hen a habeas applicant seeks permission to initiate appellate review of the dismissal of his petition, the court of appeals should limit its examination to a threshold inquiry into the underlying merit of his claims." Miller-El, 537 U.S. at 327 (citing Slack v. McDaniel, 529 U.S. 473, 481 (2000)). "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it." Id. at 336.

A COA will be granted "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2) (2004). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327 (citing Slack, 529 U.S. at 484). In other words, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. at 338. Hence, "[t]he question is the

debatability of the underlying constitutional claim, not the resolution of that debate." Id. at 342. "[A] claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." Id. at 338. Finally, any doubt as to whether a COA should issue in a death-penalty case must be resolved in favor of the petitioner. Newton v. Dretke, 371 F.3d 250, 254 (5th Cir. 2004); Medellin v. Dretke, 371 F.3d 270, 275 (5th Cir. 2004).

In determining whether the district court's denial of Salazar's petition was debatable, we must keep in mind the deferential standard of review that AEDPA requires a district court to apply when considering a petition for habeas relief. Miniel v. Cockrell, 339 F.3d 331, 336 (5th Cir. 2003); see also Miller-El, 537 U.S. at 336-37 ("We look to the District Court's application of AEDPA to petitioner's constitutional claims and ask whether that resolution was debatable amongst jurists of reason."). Under AEDPA, a federal court is not to grant a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings" unless it determines that the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); see also

Williams v. Taylor, 529 U.S. 362, 402-13 (2000) (opinion of
O'Connor, J.) (interpreting the statutory language "contrary to,
or involved an unreasonable application of").

A writ of habeas corpus may issue also if the state court's
adjudication of a claim "resulted in a decision that was based on
an unreasonable determination of the facts in light of the
evidence presented in the State court proceeding."  28 U.S.C.
§ 2254(d)(2).  Furthermore, "a determination of a factual issue
made by a State court shall be presumed to be correct" unless the
petitioner rebuts the presumption "by clear and convincing
evidence."  28 U.S.C. § 2254(e)(1).  This presumption of
correctness attaches not only to explicit findings, but also to
"unarticulated findings which are necessary to the state court's
conclusions of mixed law and fact."  Pondexter v. Dretke, 346
F.3d 142, 148 (5th Cir. 2003) (quotation marks omitted).

We review the district court's findings of fact for clear
error and its conclusions of law de novo.  Collier v. Cockrell,
300 F.3d 577, 582 (5th Cir. 2002).

## C.  Analysis

### 1.  Jury Instruction

Salazar, relying on Simmons v. South Carolina, 512 U.S. 154
(1994), argues that the state trial court violated his Fourteenth
Amendment due process rights by refusing to instruct the jury
that he would not be eligible for parole until he had served

forty years in prison.  The TCCA, noting that it has previously rejected similar claims, denied relief.  Applying the AEDPA standard to Salazar's habeas petition, the district court found that the state court's adjudication was not contrary to, or an unreasonable application of, clearly established Supreme Court law and therefore rejected Salazar's petition.

Jurists of reason would not find the district court's assessment of Salazar's constitutional claim debatable or wrong. The Supreme Court has explained that, under Simmons, a jury instruction is required only if the defendant would be ineligible for parole if he were to receive a life sentence.  See Kelly v. South Carolina, 534 U.S. 246, 248 (2002) ("[W]hen a capital defendant's future dangerousness is at issue, and the only sentencing alternative to death available to the jury is life imprisonment without possibility of parole, due process entitles the defendant to inform the jury of [his] parole ineligibility, either by a jury instruction or in arguments by counsel.") (internal quotation marks omitted) (second alteration in original); Ramdass v. Angelone, 530 U.S. 156, 166 (2000) (plurality opinion) ("The parole-ineligibility instruction is required only when, assuming the jury fixes the sentence at life, the defendant is ineligible for parole under state law."); see also Simmons, 512 U.S. at 171.  Salazar concedes, however, that had he been sentenced to life, he would have been eligible for

parole after forty years.  Thus, under Simmons and its progeny,
Salazar was not entitled to an instruction on parole.  See Jones
v. Dretke, 375 F.3d 352, 357 (5th Cir. 2004);  Tigner v.
Cockrell, 264 F.3d 521, 525 (5th Cir. 2001).  Therefore, Salazar
has failed to make a substantial showing of a denial of his due
process rights and his request for a COA with respect to this
claim is denied.

### 2.  Jury Misconduct

With respect to Salazar's claim of jury misconduct, however,
we find the district court's denial of habeas relief debatable
among jurists of reason.  We therefore grant Salazar a COA on the
question whether juror Kelly's alleged conveyance to the other
jurors of inaccurate information regarding parole during
deliberations violated Salazar's right to due process of law.

In order to assist this court in its adjudication, but
without any intention of limiting the parties from briefing the
issues as they see fit, we request that the parties submit
supplemental briefing on the following questions:

(1)  What is "the clearly established Federal law, as determined
     by the Supreme Court of the United States" on which
     Salazar's federal constitutional claim is based?  Be
     specific.

(2)  Did any of the state courts specifically address Salazar's
     federal constitutional claim (as distinguished from his

state-law claim under <u>Sneed</u>), and if so, what specifically did each such court that addressed the federal constitutional claim find with respect to that claim?

(3) What was the rationale supporting each state court finding on the federal constitutional claim?

(a) Was the rationale based on findings of fact or was it purely a legal conclusion?

(b) Did the application of the <u>Sneed</u> test arguably inform the state court's adjudication of Salazar's federal constitutional claim and, if so, how?

(4) Did the federal district court correctly identify each state court finding on Salazar's federal constitutional claim? Did the court correctly apply AEDPA by determining whether each state court finding on Salazar's federal constitutional claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States?"

We hope that the parties' briefs will shed more light upon these issues than has previously been the case.

### III.  Conclusion

For the foregoing reasons, we DENY Salazar's request for a COA on his claim that the state trial court failed to instruct the jury that he would not be eligible for parole for forty

years, but we GRANT Salazar a COA on his claim that the jury impermissibly considered inaccurate extrinsic evidence concerning his parole eligibility.  It is further ORDERED that the Clerk will specify a briefing schedule for supplemental briefs.